## KIRKHAM & WOODS v. DUPONT et al.

A owes B a debt; to secure it A & C jointly mortgage to B a piece of land owned by them in common. Subsequently, A mortgages his undivided interest in the land, to secure a debt, to D. B forecloses against A & C, and buys in the whole land, not making D a party. The time for statutory redemption having expired, B gets a Sheriff's deed. *Held*, that D, as subsequent mortgagee, may redeem A's, but not C's, interest in the land, and that the sale is final as to C's interest, D not being a necessary party to the foreclosure.

The redemption money for A's interest would be the amount of B's mortgage debt, with interest, etc. less one-half of the purchase money of the whole tract sold as the land of A & C, under the foreclosure sale.

APPEAL from the Third District.

The facts are fully stated in the opinion.

*Thompson, Irving & Pate*, for Appellants.

By the decree of the Court below, Dupont is permitted to redeem an interest in land which he never held in his own right, and on which he never had any lien, whatever, by mortgage, or otherwise. The mortgage executed by Rodman Gibbons to Dupont, conveyed only his undivided moiety of the tract of land. There was no debt due from Wm. P. Gibbons to Dupont; there was no deed or mortgage executed by Wm. P. Gibbons to him; there was no connection whatever. The act of redemption necessarily implies some interest in, or lien on, the thing redeemed; but here, we have the case of a party being permitted to redeem an interest in land in which he had no interest, and which had passed by regular judicial proceedings, and a sale thereunder, into the hands of Freaner and Johnson, and by them sold to plaintiffs.

The sale under the decree of foreclosure of the interest of Wm. P. Gibbons was valid and binding on him; he alone has a right of redemption, so far as his undivided interest was concerned; he permitted the time for redemption to expire; so far as that interest is concerned, Dupont had no right of redemption. The interest then of Wm. P. Gibbons, passed to Freaner and Johnson, and from them to the plaintiffs, and we deny the right of any Court to divest it. The decree of foreclosure, rendered in the suit of Freaner and Johnson, against Gibbons, was a valid decree,

although the Duponts were not made parties. The only effect, then, of the Duponts not having been made parties, was to have their right of redemption undisturbed.

What is the extent of that right?

Although this is a suit, instituted by the plaintiffs, for the purpose of foreclosing the defendant's equity of redemption, yet it is precisely as if the defendants had instituted their suit against the plaintiffs, asserting their right to redeem. Dupont, as the assignee of Rodman Gibbons, could redeem only the interest of Rodman Gibbons, to wit: his undivided moiety.

The next question is, upon what terms have they the right to redeem? We answer, upon paying the whole debt still due. As Rodman Gibbons could only have redeemed his own land, by the payment of his own debt, the defendants stand in the same position, and are subject to the same terms of redemption. Rodman Gibbons would be bound, before redeeming, to pay the whole debt subject to the credits justly applicable to the same, to wit: the sum of one thousand six hundred dollars, as of the date of the sale to Freaner and Johnson. At that sale the entire interest of Rodman Gibbons and Wm. P. Gibbons was sold for the sum of three thousand two hundred dollars, so that the interest of Wm. P. Gibbons must have brought the sum of one thousand six hundred dollars. It stands, then, precisely as if Wm. P. Gibbons had paid for Rodman Gibbons one thousand six hundred dollars of the debt due to Freaner and Johnson.

The sale of the undivided moiety of William P. Gibbons in the mortgage premises having been made in pursuance of law, and being acquiesced in by him, the case stands as if William P. Gibbons had sold his undivided moiety of the land to Freaner and Johnson for the sum of sixteen hundred dollars, in consideration that Freaner and Johnson credit their debt against Rodman Gibbons by said sum. The interest, then, of William P. Gibbons has been sold to Freaner and Johnson; Freaner and Johnson have sold to the plaintiffs; William P. Gibbons complains not of the inadequacy of price, or the illegality of the sale, and yet a third party, who had no lien upon the interest of William P. Gibbons —no interest in the property—no claim against William P. Gibbons, asks to redeem.

The decree provides for the subrogation of the defendants to

all the rights of Freaner and Johnson under the mortgage, and to all the rights of the plaintiffs. Now, the only rights to which the defendants could be subrogated, would be the rights which Freaner and Johnson held as against Rodman Gibbons, and not to any rights which they held against William P. Gibbons, with whom the defendants had no connection whatsoever. We admit that the defendants, as they had a lien upon the property of Rodman Gibbons, had a right, in ascertaining their claim of redemption, to see that all just credits should be allowed upon the debt of Rodman Gibbons, which debt was charged upon the fund on which they had a lien; to this extent they could go and no further.

Although the conveyance was made by William P. and Rodman Gibbons, jointly, yet that conveyance could only operate as if it had been done by separate conveyances of separate property.

*Crockett & Crittenden,* for Respondents.

1. The rights of the Duponts as subsequent incumbrancers, were not affected by the foreclosure of Freaner and Johnson's mortgage. (*Whitney* v. *Higgins,* 10 Cal. 547.) The theory of the complaint admits their right to redeem. The suit is brought to bar the equity of redemption.

2. Their rights not being in any manner affected by the foreclosure and sale, the question arises, what were those rights, and on what conditions would they be entitled to redeem? They would not be entitled to redeem the undivided interest of Rodmon Gibbons in the land, on paying one-half the mortgage debt due to Freaner and Johnson. The latter had the first lien on the whole property to secure the whole mortgage debt. The entire tract was perhaps a better security for the whole debt, than one undivided half of the tract would have been for one-half the debt.

It may be, that from the peculiar position of a small tract of forty-five acres, its value as a whole would be materially greater than the value of two separate undivided halves; at all events, the mortgagees held a lien on the whole to secure their debt, and could not be forced to release any part of the property, except on payment of the entire debt.

On paying the debt the Duponts were entitled to be subro-

gated to the rights of the mortgagees. The whole theory of the equity of redemption in a subsequent incumbrancer, proceeds upon the ground that he stands in the relation of a surety for the mortgagor.

To protect his own interest and save himself from loss, he pays the debt of the mortgagor to a third party, and is entitled to be placed in the shoes of the mortgagee, and to hold for his protection all the securities held by the mortgagee.

3. But the counsel for the Appellants insist that after the foreclosure and sale, the rights of the Duponts were altered in respect to the interest of William P. Gibbons in the land. They claim that the title to his interest has become absolute in the purchasers at the Sheriff's sale.

If Dupont had been made a party to the foreclosure suit, he might, and doubtless would, have elected to pay the mortgage debt, and be subrogated to the rights of the mortgagees. The land, at the foreclosure sale, brought less than its fair value. To allow the Appellants to keep one-half the land at one thousand six hundred dollars, and to require Dupont to pay about five thousand dollars to redeem the other half, is practically to deny him altogether the right to redeem. We do not perceive why he should be placed in this dilemma on account of the laches of the Appellants or their vendors, in failing to make him a party to the foreclosure suit. (See *Averill* v. *Taylor et als.* 4 Seld. 44; *Jenkins* v. *Cont. Ins. Co.* 12 How. Pr. 66.)

In the case at bar Dupont was a necessary party. He had a right to be heard before any decree was taken, and on such hearing and before any sale had occurred, he had a right to pay the debt, and be subrogated to all the rights of Freaner and Johnson.

In the case of a separate mortgage by William P. Gibbons, before foreclosure and sale under that mortgage, Dupont might have paid the debt and been subrogated to Freaner and Johnson's rights.

If he would have been so entitled, he is entitled to it in this case; because as to him that decree is inoperative and void.

It may be, therefore, that if William P. Gibbons had made a separate mortgage on his interest, and Freaner and Johnson had foreclosed it and sold his interest under the decree, that after

such sale, Dupont could not have interfered with it, as he was not a necessary party to such a suit, but at any time before such sale, Dupont might have redeemed and been subrogated.

In the case of a joint mortgage, he is entitled to redeem the whole property after the sale, because he was a necessary party and has had no opportunity to be heard.

On petition for a modification of the opinion and judgment, counsel relied mainly on *Bogurt* v. *Coburn*, (27 Barb. 230.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

Rodman Gibbons was indebted to Freaner and Johnson, by note; to secure it, Rodman Gibbons and William P. Gibbons executed a joint mortgage upon a tract of land held by them in common.    Afterward, Rodman Gibbons and one Lamott, his partner, became indebted to Henry Dupont and Alexis Dupont, in the sum of about sixteen thousand dollars, for which they made their note; and to secure it, Rodman Gibbons executed to the Duponts a mortgage upon his undivided interest in the tract of land embraced in the prior mortgage to Johnson and Freaner. This note to Johnson and Freaner not having been paid, they brought suit to foreclose the mortgage, but failed to make the Duponts parties to it.    The mortgaged premises were sold under decree of foreclosure, and Johnson and Freaner became the purchasers; they took the Sheriff's certificate, and subsequently the deed.    The mortgaged property not having satisfied the decree, a personal judgment was rendered against Rodman Gibbons for the deficiency.    After obtaining the deed, Freaner and Johnson conveyed the premises, and assigned the unsatisfied judgment against Rodman Gibbons to the plaintiffs, Kirkham & Woods. The parties brought this suit against Henry Dupont, as surviving partner, and as Administrator of Alexis Dupont, setting up in the complaint these facts, and praying that the Duponts be barred of their equity of redemption.    The answer admits the facts, and avers that the debt of sixteen thousand dollars from Gibbons & Lamott is due and wholly unpaid; and the defendants offer to redeem the premises, and pray to be subrogated to the rights of the plaintiffs in respect thereto.    The District Court entered a decree allowing the defendants to redeem the whole mort-

gaged premises, on paying the whole mortgage debt, interest, and costs, and all taxes, etc. and subrogating the defendants, in case of redemption, to all the rights of the plaintiffs in respect to the mortgaged premises, and the unsatisfied judgment against Rodman Gibbons. The decree directs, also, that if the redemption be made, the Sheriff's deed to Freaner and Johnson be set aside, and that the plaintiffs assign the judgment held by them to the defendants. From this decree the plaintiffs now appeal.

We have read attentively the argument of the Respondents' counsel, but it seems to us to be more ingenious than solid. It has been seen that Wm. P. Gibbons mortgaged his undivided interest in the land in question, as security for the payment of the debt represented by the note of Rodman Gibbons to Freaner and Johnson. Upon what consideration Wm. P. Gibbons made the mortgage to secure this debt, does not distinctly appear. It would seem, *a priori*, that, when Gibbons gave this mortgage as security for the debt for which it was executed, the usual legal incidents to this form of contract attached—that the creditor had the right, as one of those incidents, to enforce the security—and this he seems to have done in the usual mode, by filing a bill to sell and foreclose. The effect of the sale was to vest the title in the purchaser, if the land were not redeemed in the regular order of procedure. There was no redemption, or attempt at redemption ; consequently the title to the property became vested in the purchaser. We see no necessity for making the Duponts, who were the subsequent mortgagees of the interest of Rodman Gibbons, parties to this foreclosure suit, so far as Wm. P.'s interest is concerned, for they were not subsequent mortgagees of the land or interest of Wm. P. Gibbons, but only of the interest of Rodman Gibbons. It is quite true that the effect of the failure to make them parties was to leave them unaffected by the decree ; and that, being the assignees of Rodman thus unaffected, they still continued, notwithstanding the decree, assignees of his right, with the privilege of redeeming the premises mortgaged by Rodman ; but never having been assignees of William's rights, we are at a loss to see how either before or after the decree, they could claim to redeem from the sale made of William's interest. The case would be clear of all difficulty, if William had, subsequently to the execution of the mortgage by Rodman, executed

a deed of mortgage upon the undivided interest in the land held by him. Then, as the security was devoted to its proper purposes, and title had vested in pursuance of law, it is plain that it could only be divested in pursuance of the same law, which could only result by a compliance with the condition of redemption within the statutory time. But this not having been done, the title would be absolutely fixed in the purchaser. We cannot see that the circumstance that this mortgage of Wm. P. Gibbons was cotemporaneous, affects at all the legal principle; nor can we see that the doctrine of subrogation has anything to do with the question. The right of subrogation supposes some original privilege on the part of the person whose claim is represented by the claimant. But certainly Rodman Gibbons never had this right, and we cannot perceive how his assignees are in any better position. The whole proposition may be thus stated : A owes B a debt, and mortgages an undivided half of a piece of land to pay it; C, the owner of the other half, mortgages that half to pay the same debt; A mortgages subsequently his half—first pledged to B—to pay another debt; A has no interest in the land C mortgages; B forecloses C's interest and buys it in, he does not make the subsequent mortgagees of A, parties. But the effect of this is only to leave these mortgagees their rights—which were rights to redeem A's land, not rights to redeem C's land—the sale has become final as to the interest of C, and all the necessary parties are made to that suit; while the subsequent mortgagees may have a right, therefore, notwithstanding the foreclosure sale to redeem A's land, they have no right to redeem C's land, as to which they stood in no relation whatever.

Possibly, another view might be taken. Upon the face of the proceedings, with all the necessary parties, so far as William P. Gibbon's interest is concerned, a sale seems regularly to have been made of that interest and title regularly deraigned through judicial proceedings, which title has passed apparently to an innocent purchaser. Could, under these circumstances, a redemptioner interpose, by force of equities not apparent upon the face of the record, to defeat the title of this purchaser?

But, probably, it is not necessary to consider this question, for the view we have already taken of the case satisfies us as to the merits of the controversy.

Decree reversed, and cause remanded for further proceedings, in pursuance of this opinion.

On petition for a modification of the opinion and judgment, the opinion of the Court was delivered by BALDWIN, J.—FIELD, C. J. concurring.

Petition to modify opinion and judgment. The amount required for redemption is the amount of the mortgage debt, with interest, etc. less one-half of the purchase money of the whole tract sold as Rodman and W. P. Gibbons', under the foreclosure sale.