## GRATTAN et al. v. WIGGINS et al.

THE defense of the Statute of Limitations is a personal privilege of the debtor which he may assert or waive at his option, but it must be set up in some form either by demurrer or answer, or it will be deemed to have been waived.

In an action to recover judgment for the amount of a debt secured by mortgage on real estate, and also to foreclose the mortgage, the grantees of the mortgagor, purchasers subsequent to the execution of the mortgage, have a right to plead the Statute of Limitations as to that part of the claim of plaintiff which asks for a decree foreclosing the mortgage and a sale of the mortgaged premises.

Sec. 260 of the Practice Act of 1851 which provides that "a mortgage of real property shall not be deemed a conveyance whatever its terms" etc., applies to all mortgages, as well those executed before as after its passage.

When a debt, secured by mortgage, is payable in installments, the mortgagee or his assignee has a right to bring an action to foreclose the mortgage when the first installment falls due and is not paid.

A debt due to the intestate is a personalty, and does not descend to the heir like realty, but vests in the administrator, who has the sole right to maintain actions to collect the same, and it is error to join the heir as plaintiff with the administrator in an action to enforce its collection.

Where several notes have been given which are secured by one mortgage, and the notes are assigned to different persons, the assignor has a right, by agreement with the assignees, to fix the rights of the purchasers of the several notes to the mortgage security.

Where in such case the assignee of one note having the first right to the benefit of the mortgage security forecloses when the debt falls due, and obtains a decree under which all the mortgaged property is sold, such foreclosure and sale operate as an extinguishment of the mortgage.

The holders of the other notes secured by the mortgage, have a right to redeem from the sale made under such foreclosure, but when not made parties to the action must assert this right to redeem within four years, or it is barred by the Statute of Limitations.

The right to foreclose and the right to redeem are reciprocal, and the Statute of Limitations as to the right of redemption begins to run at the time the right of action accrues on the mortgage.

APPEAL from the Third Judicial District, Santa Clara County.

The facts are fully stated in the opinion of the Court.

*John B. Hall*, for Appellants, Grattan et al.

The mortgage was a common law conveyance, and vested the legal title in the mortgagee.

Grattan *v.* Wiggins.

Immediately upon the delivery of the deed, Cook was entitled to the possession, and could maintain ejectment for the same; and Wiggins became, and was thereafter, the mere tenant at sufferance of his grantee, and not entitled to notice to quit before suit for possession. (4 Kent's Com. 155 *et seq.; Goodwin* v. *Richardson, Adm'r,* 11 Mass. 469; *Perkins et al.* v. *Petts et al.,* 11 Id. 125; Adams on Eject. 60 *et seq.* and notes; Id. 33, 520, 521; Smith's Leading Cases, 666; 10 Mo. 229, 230; 2 Parsons on Contracts, 379.)

And once in possession the rule was that the mortgagee could not be evicted until the debt was paid. (*Waring* v. *Long,* 2 Barb. Ch. 135.)

No statutes have been, or indeed could constitutionally, have passed, which would have altered that relation of Cook to the premises.

The common law was the rule of decision when this conveyance was executed and delivered (Act of 1850, Ch. 90), and from that law the instrument derived its character, and the parties became invested with their several rights. (*Van Maren et al.* v. *Johnson et al.,* 15 Cal. 308.)

If a change has been wrought in the legal effect of deeds of mortgage, it has been brought about solely in virtue of Sec. 260 of the Civil Practice Act, passed April, 1851, and which can by no principle of law, right, or justice, be held to take from Cook and his representatives, that which was firmly fixed long before, as his and their rights and estate. (*People* v. *Hays,* 4 Cal. 127; *Fogarty* v. *Sawyer,* 17 Id. 589.)

At the common law, and treating the deed of July, 1850, as conveying to the grantee, Cook, the substantial title and ownership, there is no bar by lapse of time to the relief sought, or any part of that relief. The period of twenty years, by analogy to the rule at law, was adopted in equity as the time after which a presumption of payment and of a reconveyance of the title was allowed. But that length of time has not elapsed, and so no impediment arises from that cause. (4 Kent's Com. 189, note *a,* and the authorities there cited.)

But it may be claimed, that by analogy to the statute of our

State, the period should be reduced to five years. (Wood's Digest, Arts. 6, 7.) If adopted, however, it would still leave open and operative the rule everywhere recognized, that as the lapse of time only raises a presumption, that presumption may be rebutted by direct proof or by circumstantial evidence showing the fact to be otherwise. (4 Kent's Com. 190 ; *Hughes* v. *Edwards*, 9 Wheat. 489.) There was no person *in esse*, when all the payments after that of January, 1853, became due, to whom the right of action accrued. There was no personal representative of Cook from May 26th, 1853, to December 4th, 1856. Therefore the limitation of the statute never commenced to run as to the five payments maturing at different dates within this space of time. (*Smith* v. *Hall*, 19 Cal. 85 ; *Quivey* v. *Hall*, Id. 87.)

If the legal estate passed by virtue of the mortgage, and the mortgagee became the owner, this relation of the parties to the property will be considered by the Court as continuing, and their rights will be determined according to this relation, and will not suffer any impairment by reason of our act prescribing a specific judgment in every case of this class. This bill prays for a decree of strict foreclosure ; and yet if this be not grantable, the Court will render a decree in the designated form.

*Wallace,* for Appellants Laurencel and Eldredge.

There is a misjoinder of parties plaintiff in the complaint. Rebecca Grattan was the widow and heir at law of Grove C. Cook, but she was not an administratrix of the estate ; the administrators alone (Hall & Huggins) had the right to maintain a suit respecting the matters set forth in the complaint. If the plaintiff Rebecca could jointly with the plaintiffs Hall & Huggins maintain this suit, then a payment made to her would satisfy the demand, and the estate would be deprived of its assets. She is not entitled to anything or to receive anything, except her distributive share of the estate after it passes through the hands of the administrator in the Probate Court ; in other words, the whole complaint may be true, and yet she be entitled to receive nothing, because *non constat* that the whole of the money sued for may not be applied in the Probate Court to the payment of the debts of the estate. (*Meeks* v. *Hahn*, 20 Cal. 627.)

Grattan *v.* Wiggins.

By the terms of the mortgage, Cook was authorized, as the holder of these notes, to foreclose the mortgage if " any one " of the notes should not be " duly and punctually paid." On the first day of December, 1851, when Foster commenced the foreclosure suit against Wiggins, Foster was the holder of the only one of these notes which was not at that time " duly and punctually paid." One note falling due before that time had been paid; none of the other notes, except Foster's note, was due at that time. No right, then, existed to foreclose the mortgage for any note but the Foster note. Now, in order to determine the right which Foster had as assignee of Cook, let us inquire how it would have been if Cook had never assigned the Foster note at all, but had filed his complaint in December, 1851, to foreclose the mortgage as holder of the note and mortgagee. In such a case, is it not clear that Cook might have maintained his suit properly against Wiggins, the mortgagor, upon the allegation that one of the notes was due and unpaid? Would he have been called on in such a bill of complaint to account for the other notes which were not due, and in respect to which no relief was or could be asked? Certainly not. He had a right to sell the whole of the mortgaged premises to pay the note that was due. The terms of the mortgage in this case are precisely similar to the provisions of the Statute of Indiana in relation to the foreclosure of mortgages. (*Andrews* v. *Jones*, 3 Blackford, 440; *State Bank* v. *Tweedy*, 8 Id. 449.) And it is held in those cases that the whole of the mortgaged property may be sold, and the sale money applied to the payment of the note or installment then due. (See also the dissenting opinion of Ch. J. Gibson, in *Donly* v. *Hayes*, 17 S. &. R. 400; and the case of *Cullum* v. *Erwin*, 4 Alabama, 452.) The dissenting opinion of Ch. J. Gibson, in the case of *Donly* v. *Hayes*, *supra*, is a clear and able exposition of the law in the case at bar. He says : " My position is that the assignee is a purchaser for a valuable consideration of all the securities of the assignor and of all the remedies, and may use them in any way he may think proper as freely and as beneficially as could the assignor himself, to whom it was indisputably competent at the time of the assignment to order the mortgage to stand as a security in the first place for the installment due on the particular bond."

In the case of *Slee* v. *Manhattan Company* (1 Paige's Ch.), it is held in a case similar to this at bar, that the assignee (who was proven in that case to be a new mortgagee) had power to foreclose and sell the mortgaged property, and that such a sale was binding upon the assignor, though he was not made a party to the proceeding. In that case, as the assignee was in fact a mortgagee of the assigned note and mortgage, and became at the sale a purchaser of the mortgaged premises, he was decreed to be a trustee of the assignor; but it was declared that if a stranger had purchased at such a foreclosure, he would have taken the title free from any question; and that in that event the right of the assignor (which sprung from the fact of his assignment being only to secure a debt that he owed to his assignee, and therefore being only a mortgage) would have rested solely upon the money which was raised by the sale of the land. Here a stranger (Fossatt) did purchase, and has since sold. Cook, therefore, had no interest upon which he ought to have been made a party, except an interest in the surplus of the payment of the Foster note; and until it was ascertained that there was a surplus, he had no business in Court. (*The Union Insurance Co.* v. *Van Rensellaer*, 4 Paige, 85.) The right of Cook to redeem (if he had any such right) from the sale in the suit of *Foster* v. *Wiggins*, was barred of limitation. The cause of action accrued to Cook during his lifetime, and could not have existed beyond four years of its accrual. (Wood's Dig. Art. 17, p. 47.) The statute having commenced to run during Cook's lifetime, did not stop running on account of his death, and, as a consequence, was barred in the year 1856.

It is admitted in the pleadings, that Laurencel and Eldredge (these appellants) necessarily expended $200,000 in obtaining a confirmation of this claim. Except for this expenditure and effort of theirs, the title to this land was forfeited under the Act of 1851. Will the principles of equity permit these representatives of Cook, who have lain by and quietly witnessed these efforts and expenditures of the appellants, to step forward now and appropriate the results and fruits of that protracted and expensive litigation without any provision or condition for the repayment of that $200,000 claimed and admitted in the face of the Court to have been neces-

sarily expended in good faith by Laurencel and Eldredge? The law of the land having clothed them with the superior legal title to this land, is there a superior equity on the part of the plaintiffs to subject the land to the payment of their stale claim?

*William Barber,* also, for Respondents Laurencel and Eldredge.

Giving the plaintiffs the benefit of the common law doctrine respecting mortgages, their right of entry would in this case be barred by lapse of time. Our Statute of Limitations was passed April 22d, 1850, and was consequently in operation prior to and at the time of the execution of the mortgage in question. The present suit was commenced January 22d, 1859. The mortgage was executed July 22d, 1850, eight years and a half before this suit was commenced. The right of entry accrued on the execution of the mortgage (*McMillan* v. *Richards,* 9 Cal. 407), and the statute began to run from that time. (*Doe* v. *Lightfoot,* 8 Mees. & Wels. 553.) As the statute began to run during Cook's lifetime, his decease, February 15th, 1852, did not stop it. (*Quivey* v. *Hall,* 19 Cal. 100; Angell on Limitations, 57; *Jackson* v. *Moore,* 13 Johns. 513.) This Court decided, in the case of *Lord* v. *Morris* (18 Cal. 486), that "in this State the statute applies equally to actions at law and suits in equity."

So far as concerns the remedy of the plaintiffs on the notes of Wiggins, Laurencel and Eldredge have no control over it. But when the plaintiffs seek to obtain satisfaction of their demands against Wiggins personally, by foreclosing a mortgage on which the cause of action accrued more than eight years before they commenced their suit, the present holders and owners of the mortgaged property certainly have a right to insist that this part of the remedy is barred by the statute. The case of *Lord* v. *Morris* (18 Cal. 482) decides the principle of this branch of the case.

At the time when the installment of July 21st, 1851, became due, and the right of foreclosure accrued, our statute regulating the foreclosure of mortgages was in operation. (Practice Act of April 29th, 1851, Secs. 246–248; Wood's Digest, 260, Secs. 980–982.) The practice to be pursued where only part of the debt is due is pointed out in the last section of this act: " So soon

Grattan *v.* Wiggins.

as sufficient of the property has been sold to pay the amount due, with costs, the sale shall cease; and afterwards as often as more becomes due for principal or interest, the Court may, on motion, order more to be sold. But if the property cannot be sold in portions without injury to the parties, the whole may be ordered to be sold in the first instance, and the entire debt and costs paid, there being a rebate of interest where such rebate is proper."

CROCKER, J. delivered the opinion of the Court—NORTON, J. and COPE, C. J. concurring.

This is an action to foreclose a mortgage upon the undivided one-half of the "Rancho de los Capitancillos," in Santa Clara County, executed by Wiggins to one Cook, dated July 22d, 1850, to secure the payment of the sum of $50,000, payable in ten equal installments of $5,000 each, due every six months from the date of the mortgage, with power to the mortgagee to foreclose the mortgage if any one of the payments should not be duly paid. Notes were given at the same date for the several installments. The suit was commenced on the twenty-second day of January, 1859, and the Court held that the action as to all the notes, except the two last, which fell due the twenty-second of January and July, 1855, was barred by the Statute of Limitations, and rendered a judgment, which, after reciting that there was due on these notes for principal and interest the sum of $17,097 24, ordered the mortgaged premises to be sold and the proceeds applied to the payment of this debt and the costs of suit, and if the same should be insufficient to pay the debt, then a judgment should be docketed in favor of the plaintiff Hall, administrator of Cook's estate, against the defendant Wiggins, for such deficiency, and foreclosing the equity of redemption as to the defendants Wiggins, Foster, Laurencel, and Eldredge, and all persons claiming under them, after the twenty-second day of January, 1859, the date of the filing of notice of the pendency of the suit. From this judgment the plaintiffs have appealed, on the ground that the Statute of Limitations was no bar to any of the unpaid notes. The defendants Laurencel and Eldredge, who claim to be the owners of the mortgaged premises, also appeal from the judgment and the order refusing a new trial, on various grounds.

Grattan *v.* Wiggins.

The record shows that the first of the notes executed by Wiggins to Cook, and which fell due January 22d, 1851, was paid. The second note, which fell due July 22d, 1851, was, on the fifteenth day of May, 1851, assigned by Cook to Foster, one of the defendants, together with the mortgage, which was also delivered, to secure Foster in the payment of the $5,000 called for by the note. The third, fifth, sixth, ninth, and tenth notes have been lost or destroyed. The fourth note, which fell due July 22d, 1852, was, on the twenty-seventh day of June, 1851, assigned by Cook to the defendant Smith, to secure a note for seven hundred and seventy-one dollars and thirty cents, bearing interest at ten per cent. per month, executed by Cook and one McKinney; and Cook also assigned by deed the $50,000 mortgage as further security. The seventh and eighth notes, due January and July 22d, 1854, are in the possession of the defendant Laurencel; but the Court found that he had no interest in or title to them. Cook died February 15th, 1852, and at that time he had all the notes in his possession, except the first, second, and fourth, the two last having been assigned to Foster and Smith. On the ninth day of August, 1858, the defendant Smith assigned the fourth note and the mortgage to Laurencel. The original mortgage was lost by Foster some time about November, 1851.

On the twenty-fifth day of April, 1851, Wiggins conveyed by deed, duly executed, acknowledged, and recorded, all his interest in the mortgaged premises to one Berrian, who, on the thirtieth day of October, 1858, conveyed the same to Laurencel and Eldredge, two of the defendants. On the first day of December, 1851, Foster commenced an action in the proper Court against Wiggins, who was the sole defendant, to recover judgment on the second note, which had been assigned to him, and to foreclose the mortgage; and on the eighteenth day of December, 1851, he recovered a personal judgment therein against Wiggins, and a decree for the sale of the mortgaged premises to pay that judgment and foreclosing the equity of redemption. Under this judgment the mortgaged premises were duly sold by the Sheriff to the defendant Fossatt, and on the twenty-sixth day of January, 1852, he executed to Fossatt a deed therefor. Fossatt paid $5,500 for this purchase,

which was applied to the payment of the judgment against Wiggins, and the small balance remaining was applied upon an execution in favor of Fossatt against Wiggins; and Fossatt afterward conveyed the premises to Laurencel and Eldredge.

Cook died on the fifteenth day of February, 1852, leaving his wife Rebecca surviving him, and one infant child, who died in June, 1854—and Rebecca intermarried with C. Grattan, August 17th, 1854. The Public Administrator of Santa Clara County was appointed administrator of Cook's estate, June 17th, 1852, and resigned the trust May 26th, 1853, and letters of administration were issued to Hall & Huggins, December 4th, 1856. Huggins died November 19th, 1861. This action was commenced January 22d, 1859, by Rebecca Grattan, as heir at law, and Hall & Huggins as administrators of the estate of Cook.

Fossatt, at the date of the Sheriff's deed, January 26th, 1852, took possession of the mortgaged premises under his deed, and he and Laurencel and Eldredge, his grantees, have been in possession ever since, claiming to be the owners of the premises under the Sheriff's sale and deed. The title of the premises mortgaged by Wiggins was under a Mexican grant, and Fossatt, after his purchase, filed a claim as the owner of this undivided half of the rancho, before the Board of United States Land Commissioners, and prosecuted the same at great expense, and procured a final confirmation of the same to himself on the 18th day of October, 1858. This claim, which also included another undivided one-fourth interest in the rancho, was prosecuted at the request of Laurencel and Eldredge, and at a cost of $200,000.

We will first examine the questions raised by the appeal taken by the plaintiffs. They complain of the judgment, because it was not rendered for the amount of the principal and interest due on all the unpaid notes, to wit: all but the *first* and *second;* the *first* they admit having been paid Wiggins, and the *second* by the sale under the decree of foreclosure. They claim that none of these unpaid notes are barred by the Statute of Limitations, and that the Court below erred in holding the contrary.

The complaint in this case prays for a personal judgment against Wiggins for the amount of these unpaid notes. Wiggins appeared

and demurred to the complaint upon several grounds, but the Statute of Limitations is not one of them. The demurrer was overruled, and no answer appears to have been filed by him, nor does it appear that any default for failing to answer was ever entered against him. The defense of the Statute of Limitations is a personal privilege of the debtor, which he may assert or waive at his option, but it must be set up in some form, either by demurrer or answer, or it will be deemed to have been waived. Under the pleadings in this case, the plaintiffs were entitled to a personal judgment against Wiggins for the whole amount of the unpaid notes, and the Court erred in not rendering judgment accordingly.

The defendants Laurencel and Eldredge, however, set up the Statute of Limitations both by demurrer and answer, but the plaintiffs insist that the right to plead the statute is personal to the debtor, and that therefore they have no right to set it up. It is true, that so far as relates to the personal liability of Wiggins to pay the debt, they cannot plead the statute so as to affect that right. But the plaintiffs ask for other relief; that is, the sale of the mortgaged premises to pay the debt. The defendants Laurencel and Eldredge, claiming the title to these premises as grantees of the estate of the mortgagor, as well as under the decree of foreclosure in the suit of Foster, have a direct interest in defeating the claim of the plaintiffs to a decree of foreclosure and sale of the mortgaged premises, and have a clear right to plead the statute against that part of the claim of the plaintiffs. (*Lord* v. *Morris,* 18 Cal. 482; *McCarthy* v. *White,* 21 Id. 495.) The waiver of this defense by Wiggins could not operate as a waiver by the other defendants, or affect their rights in any way.

But the plaintiffs insist that as the mortgage was executed on the twenty-second of July, 1850, before the two hundred and sixtieth section of the Practice Act of 1851 was in force, therefore they have the same rights and remedies as are provided at common law for the enforcement of the mortgage, among which is the right of the mortgagee to the possession of the premises. Sec. 260 provides that " a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover the possession of the real property,

without a foreclosure and sale." It clearly applies to all mort-
gages, as well those executed before as after its passage. It relates
substantially to the remedy for the enforcement of the rights of the
mortgagee; for although by the strict rules of the common law a
mortgage was deemed to vest a conditional estate in the realty in
the mortgagee, which became absolute upon a failure to perform
the conditions, yet equity always treated it substantially as a secur-
ity for a debt; and if the mortgagee took possession under his
common law right, equity compelled him to account for the rents
and profits which were applied in liquidation of the mortgage debt.
So that this section of the Act of 1851 cannot, so far as it applies
to mortgages passed prior to its passage, be held as divesting a
vested right of property, but as merely taking away, or rather,
changing the form of the remedy, to enforce a right. Indeed, the
provisions of the Practice Act of 1850, which were in force at
the making of this mortgage, have substantially the same effect.
Secs. 309, 310, and 311 of that act provide that in proceeding to
enforce a mortgage it shall not be necessary to make other incum-
brancers parties, but the action may be against the mortgagor
alone, alleging in the complaint the existence of the debt and of
the mortgage, and praying a sale of the property; that the judg-
ment by which a mortgage is enforced *shall* be for the sale of the
property for the satisfaction of the debt, and if the proceeds be
insufficient to pay it, execution shall be issued for the residue; and
that upon this judgment an order of sale shall issue, and the proper-
ty be sold thereon in the same manner as under executions. Under
this statute, if a mortgagee should bring an action to enforce his
mortgage by a recovery of the possession of the mortgaged prop-
erty under this common law right, the Court would be compelled
in rendering judgment to follow the provisions of Sec. 310, which
says that "the judgment by which a mortgage is enforced *shall*
be," etc. In considering this question Chief Justice Field, in his
opinion in the case of *Dutton* v. *Warschauer* (21 Cal. 623), after
a full examination of the authorities, says: "Mortgages, there-
fore, executed before the statute (of 1851) can only be treated as
conveyances when that character is essential to protect the just
rights of the mortgagee; mortgages since the statute are regarded

at all times as mere securities, creating only a lien or incumbrance, and not passing any estate in the premises." And he accordingly ruled that a mortgagee, although in possession after condition broken, could not convey the legal title. The other Judges specially concurred in the judgment, and the opinion can therefore have no weight as an authoritative decision of the law.

Whatever may be the construction of these sections of the Practice Act of 1850, or of Sec. 260 of the Act of 1851, it is a sufficient answer to this position of the plaintiffs that this is not an action to enforce any asserted right of possession in the mortgagee, but an action founded entirely upon and seeking to enforce the remedies provided by the present statute for the foreclosure of mortgages, and must, of course, be governed by the same rules of law as all other actions of like character. By those rules, as repeatedly held by this Court, the mortgage is barred by the same lapse of time as other contracts in writing. The same result follows when it is considered that the Statute of Limitations, which bars actions upon contracts or liabilities founded upon instruments in writing after the lapse of four years, was in force prior to the execution of these notes and mortgages; though we would not wish to be understood by this as holding that, if it had not been adopted until afterwards, it would not equally operate as a bar.

The plaintiffs, however, claim that although the action is for a foreclosure of the mortgage, yet the Court could treat it as an action for the possession of the land, under the common law right of possession vested in the mortgagee. Although we consider that form of remedy as no longer existing, and that it is doubtful whether the Court can thus radically change the character of the action, yet there are conclusive answers to this claim. 1st. As an action for the possession, the date of the right of action is the date of the mortgage, and more than five years elapsed from that time before the commencement of the suit. In answer to this, the plaintiffs say that the possession of the mortgagor and those claiming under him was as tenants at sufferance of the mortgagee; that their possession was not, therefore, adverse, and so the statute did not apply. Even if this were so, their possession was clearly adverse when they took possession under the Sheriff's deed, for then they claimed a

right 'of possession superior to and adverse to the claim of the mort- ·
gagee, and more than five years had elapsed since the date of that
deed.    2d.  The assignment of the mortgage to Foster and the deed
from Cook to Smith would operate at common law as a transfer of
this right of possession in the mortgagee to those parties, and thus
defeat the right of the present plaintiffs to recover the possession
under this asserted common law right.

There was no administrator on Cook's estate from May 26th,
1853, to December 4th, 1856, during which time the last five notes
fell due, and it is now insisted that as there was no person author-
ized to bring actions on these notes when they fell due, therefore
the Statute of Limitations did not commence running until Decem-
ber 4th, 1856, and so the time had not expired when this suit was
commenced, and the plaintiffs were entitled to recover on all these
five notes, instead of the two last, which alone were allowed by the
Court.    Upon this point we are referred to the cases of *Smith* v.
*Hall* (19 Cal. 85) and *Quivey* v. *Hall*, Id. 97).    But in those
cases the administrator was *defendant*, and not the plaintiff as in
the present, and the rule of law is entirely different in the two
classes of cases.    Sec. 24 of the statute regulates both, and there
is nothing in that section which relieves the plaintiffs in this case
from the bar of the statute.    Besides, there were administrators of
the estate before any of these five last notes had been barred who
could have commenced actions thereon.

The mortgagee and those claiming under him had a clear right
to bring an action to foreclose the mortgage when any one install-
ment fell due and was unpaid, both by the terms of the mortgage
and the provisions of Sec. 248 of the Practice Act, the latter of
which regulates fully the proceedings in cases where the mortgage
debt is payable in installments.    It is urged that the heir at law
was ignorant of the law which rendered the proceedings of Foster
to foreclose the mortgage invalid, and this is a good excuse for not
bringing this action sooner, and a good reason why the Court should
hold the statute no bar ; but we do not deem that a valid ground
for setting aside a plain provision of the law.    As to the hardship
of the case, arising from ignorance of the law relating to necessary
parties to foreclosure suits, it can be plead with much greater

Grattan *v.* Wiggins.

force and reason by the defendants than the plaintiffs. We have carefully examined the points made by the plaintiffs in their appeal from the judgment, and have come to the conclusion that the Court below did not err in holding the statute, as plead by the defendants Laurencel and Eldridge, a bar to all the notes falling due prior to the two last so far as relates to the mortgage.

II. The next questions to examine are those raised by the defendants Laurencel and Eldredge by their appeal. The first point is, that the Court below erred in overruling the demurrer to the complaint filed by those defendants. One of the grounds of the demurrer was, that there was a misjoinder of parties plaintiff, in this, that Rebecca Grattan should not have been joined with the administrators in the suit. She is the heir at law of her deceased husband and child. This ground of demurrer was well taken, and the Court erred in not sustaining it. The action is to recover a debt alleged to be due to the estate, and relates entirely to the personalty, which does not descend to the heir like realty, but vests in the administrator, who has the sole right to maintain actions, to collect debts due the deceased. (Wood's Dig. 400, 411.) And until the estate is finally settled he has the right to maintain all suits for the possession of the real property of the estate. (*Meeks* v. *Hahn*, 20 Cal. 620.)

The appellants also insist that under the pleadings and the findings of the Court the plaintiffs were not entitled to any judgment whatever against Laurencel and Eldredge ; and this necessarily requires an investigation of the merits of the whole case. The first question we propose to examine is the effect of the foreclosure of the mortgage by Foster upon the rights of the parties. The plaintiffs insist that those proceedings were utterly null and void, and did not affect the rights of the parties in any way (except, perhaps, to operate as a satisfaction of the second note), because Smith, the holder of the fourth note, and Cook, the mortgagee and the holder of all the other notes, and Berrian, the grantee of the mortgagor, were not made parties to the action. On the contrary, the defendants claim that the three hundred and ninth section of the Practice Act of 1850, which provided that " in proceedings to enforce a mortgage it shall not be necessary to make other incum-

brancers parties, but the creditor may maintain his action against the mortgagor alone," etc., governed the action, and therefore it was not necessary to make them parties.

In this the defendants are mistaken. The action was commenced December 1st, 1851, after the Practice Act of 1851, which repealed the Act of 1850, had taken effect; and the proceedings were, therefore, governed by the Act of 1851, which contained no provision of a like character.

The action to foreclose the mortgage was brought by Foster upon the second note, the first having been paid; and it is an important question what his rights were relative to the holders of the other notes. Where several notes have been given which are secured by one mortgage, and they are assigned to different persons, it has been a question whether each holder of a note is entitled to a *pro rata* interest in the mortgage, or whether the holder of the note first falling due, or of the note first assigned, has priority over the others and can apply the proceeds of the mortgaged property to the full payment of his note, to the exclusion of the others when the same is insufficient to pay all. In the absence of any special agreement with the mortgagee, it would seem to be but just and equitable that each should be entitled to a *pro rata* share, upon the principle that equity delights in equality. (*Phelans* v. *Olney*, 6 Cal. 480; *Donly* v. *Hays*, 17 S. & R. 400; *Henderson* v. *Herrod*, 10 S. & M. 631; *McVay* v. *Bloodgood*, 9 Porter, 547.)

Yet there are several authorities which hold that the rule of priority prevails. (*State Bank* v. *Towdy*, 8 Blackford, 447; *Collum* v. *Irwin*, 4 Ala. 452; *Bank of U. S.* v. *Covert*, 13 Ohio, 240; *Hunt* v. *Stiles*, 10 N. H. 466.)

But it is clear that the mortgagee has the right by agreement to fix the rights of the holders of the several notes to the mortgage security, and such an agreement may be implied from the circumstances of the transfer. (*Sherwood* v. *Dunbar*, 6 Cal. 53; *Keyes* v. *Wood*, 21 Vermont, 339; *Langdon* v. *Keith*, 9 Id. 299; *Wright* v. *Parker*, 2 Aikins, 212; *Pattison* v. *Hull*, 9 Cowen, 752; *McVay* v. *Bloodgood*, 9 Porter, 547; *Banks* v. *Tarleton*, 23 Miss. 173.)

Sec. 248 of the Practice Act provides that a mortgage given to secure installments due at different times may be foreclosed

Grattan *v.* Wiggins.

when any one or more installments are due, and if the property cannot be sold in portions without injury to the parties, the whole may be sold. A foreclosure and sale in such case would clearly operate as an extinguishment of the mortgage, whether the proceeds were sufficient to pay the whole debt or not. (*Kimmel* v. *Willard,* 1 Doug. Mich. 217 ; *McGrew* v. *Lanahan,* 1 Penn. 44 ; *Salmon* v. *Clagett,* 3 Bland. Ch. 180 ; *Brinkerhoff* v. *Thallheiner,* 2 J. C. 485 ; *Campbell* v. *Macomb,* 4 Id. 534 ; *Banks* v. *Chester,* 1 Jones, 290.)

In this case, the Court found " that at the time of the transfer and delivery of the note to Foster, Cook also assigned and delivered the mortgage to Foster to secure him in the payment of the $5,000 called for by the note." This shows a special agreement between Cook, who then held all the notes, and Foster, by which the latter was to hold the mortgage as security for the payment of the note then assigned to him, thereby giving him a right to full payment from the proceeds of the mortgage. This agreement, as we have shown, the parties had a right to make, and the Courts will enforce it.

It follows, therefore, that Foster had the right to foreclose the mortgage and sell the whole of the mortgaged property, or so much thereof as might be necessary for the payment of that part of the mortgage debt held by him ; that the holders of the other notes had no right to require him to pay them a *pro rata* portion of the proceeds of the sale, and if it required a sale of the whole of the mortgaged property to pay his debt, it would leave nothing upon which they could claim any lien or incumbrance. The interest of the holders of the other notes was not that of subsequent incumbrancers to Foster, but simply as parties' having an interest in the same incumbrance upon such portion of the mortgaged premises as might remain after the satisfaction of that portion of the debt held by Foster. They could not properly be designated as the holders of a junior incumbrance, because they claim under the same mortgage, and not by a junior one. They had an interest in a portion of the mortgaged debt ; that is, that portion of it held by them, but not in that portion held by Foster. They would have been proper parties as co-plaintiffs with Foster, in the suit to foreclose, so that

they could receive any overplus of the proceeds of the sale of the mortgaged property which might remain after the payment of Foster's debt, but they were not *necessary* parties in the sense that no decree of foreclosure could be made without bringing them in. They could not insist upon having their claim to this surplus litigated until it was ascertained that there would be a surplus. (*Union Ins. Co.* v. *Van Rensselaer*, 4 Paige, 83.) It is true that their interest in the mortgaged debt and lien could not be affected by a decree rendered in a suit to which they were not made parties ; still, if, as we have shown, that interest only extended to a right to have the surplus proceeds of the sale applied to their debt, it would have made very little difference in this case whether they were made parties or not, for the surplus remaining amounted to only about five hundred dollars. That surplus Smith, as the assignee of the *fourth* note and of the mortgage, had a right to have applied on his note, and upon a proper application to the Court would have ordered that surplus to be paid to him. But neither Cook nor the present plaintiffs have any claim upon this surplus, and have no just right to complain that they were not made parties to the foreclosure suit, for the result has shown that they would have received no benefit from it, as the proceeds of the sale were entirely insufficient to reach the notes held by Cook. Whatever claim or interest Smith may have had in the mortgage or the mortgage debt he transferred to the defendants Laurencel and Eldredge, which would at least transfer the right to this surplus.

But even if they ought properly to have been treated as the holders of incumbrances subsequent to that of Foster, we do not see that the plaintiffs would be in any better position. The law seems to be pretty well settled, that junior incumbrancers are not *necessary*, though proper parties to an action to foreclose a mortgage. (*Kirkham* v. *Dupont*, 14 Cal. 559 ; Story's Eq. Pl. Sec. 193, note; Calvert Parties in Equity, 132–137.) They have a right to redeem the prior mortgage, and if they are not made parties to the action to foreclose the mortgage, that right of redemption still remains unaffected by the decree and sale under it. By the transfer of the fourth note and the mortgage to Smith, he stood

Grattan *v.* Wiggins.

next to Foster, as the holder of that part of the incumbrance to be first paid after Foster, and· his rights, whatever they were, were afterwards transferred to Laurencel and Eldredge. The present plaintiffs have no right to object to the proceedings in the foreclosure suit, that Smith was not made a party, for they are not in any way injured by it. (*Whiting* v. *Bank of the United States,* 13 Peters, 14.) Then as to Cook and his legal representatives, he had a right, as such subsequent incumbrancer, to commence his action to redeem the prior mortgage of Foster, and this right of action accrued at the date of the assignment of the note and mortgage by him to Foster, May 15th, 1851. This right of redemption accrued at that date, and as he was not made a party to the foreclosure suit it continued unaffected by those proceedings. But this right of action was liable to be barred by the lapse of time, if not prosecuted within the time fixed by the Statute of Limitations. This action was not commenced until the twenty-second day of January, 1859, nearly seven years after the date of the deed to Fossatt, and the possession of the mortgaged premises by him under it. Fossatt and those holding under him had thus held the undisturbed and undisputed possession of the premises, claiming title thereto exclusive of all others, founded upon a written instrument purporting to be a conveyance of the premises in question, from the twenty-sixth day of January, 1852, to the commencement of this action. Treating this right of redemption, asserted by the plaintiffs in their complaint, as founded upon an instrument of writing, or as included among actions for relief not specially provided for, and therefore as included under Secs. 17–19 of the statute, in either case the action, so far as it is founded upon this right of redemption, is barred, not having been commenced within four years.

In England it was held that Courts of Equity were not within the statute, because its words applied only to particular legal forms of action; but they still applied the statute to suits in equity, in obedience to the law. Thus, as an action for the recovery of real estate was barred by twenty years' adverse possession, it was held that where the mortgagee had for twenty years held possession of the mortgaged premises, without acknowledging the existence of

the mortgage, equity would presume that the mortgage had been foreclosed, and that he held by an absolute title, and these facts were a positive bar to relief. (Angell on Limit. 24, 25 ; 2 Story's Eq. Jur. Sec. 1520.) In *Slee* v. *Manhatten Co.* (1 Paige, 48), Slee had assigned a mortgage to secure a debt to the defendants, which they had foreclosed as to the mortgagors, and bid in the property, and then refused to let him redeem ; it was held that as the defendants had purchased the property he had a right to redeem the land, but if it had been purchased by a stranger he could only have redeemed the proceeds of the sale in the hands of the defendants ; and that this right of redemption was liable to be barred by the lapse of time. (*Moore* v. *Cable*, 1 J. C. 385 ; *Cook* v. *Arnham*, 3 P. Wm. 283 ; 3 Atk. 313.)     Even if our statute had not included equitable actions, it is clear, under the English rule, that as it has fixed five years for the limitation of actions for the recovery of real estate, the adverse possession by a mortgagee for that period would operate as a bar.     So too, Courts of Equity always proceeded, upon general principles of their own, even where there was no analogous statutable bar, and refused relief to stale demands, where a party had slept upon his right and acquiesced for a great length of time.     And in thus refusing relief equity often allowed a much shorter time than that fixed by the Statute of Limitations to operate as a bar.     (2 Story's Eq. Juris. Sec. 1520, and note.)     And the same principle has been fully recognized by this Court.     (*Dominguez* v. *Dominguez*, 7 Cal. 424 ; *Green* v. *Covillaud*, 10 Id. 329.)

But our Statute of Limitations applies to suits in equity as well as actions of law.     While the English statute applied only to particular forms of action, such as assumpsit, trespass, and the like, the law of this State applies to the subject matter of the suit, regardless of the form or name of the action, or the forum in which it is brought.     This Court has, therefore, held that it applies to suits in equity equally with actions in law.     (*Lord* v. *Morris*, 18 Cal. 482 ; *McCarthy* v. *White*, 21 Id. 496 ; *Pearis* v. *Covillaud*, 6 Id. 617.)

In the first two of the above cases the action was by the mortgagee to foreclose the mortgage, and it was held that the action

Grattan *v.* Wiggins.

must be brought within four years from the time the right of action accrued. It is held that " the right to foreclose and the right to redeem are reciprocal and commensurable," and if one cannot be enforced, that is regarded as sufficient to preclude a claim for the other. Thus if the right to foreclose is barred by the lapse of time, the right to redeem is equally barred. (2 Hilliard on Mortgages, 2, 3, 14, 15.) We therefore hold that the right to redeem, asserted by the plaintiffs in this case, was barred by the Statute of Limitations, as well as by the staleness of the claim and the acquiescence of the parties.

The decree of foreclosure was not absolutely void. It was valid as against the mortgagor, who was the sole defendant. He was a necessary party to the suit to foreclose, for although he had previously conveyed the mortgaged premises yet it does not appear that his vendee had assumed to pay the mortgage debts. (*Shaw* v. *Hoadley*, 8 Blackf. 165; *Swift* v. *Edson*, 5 Conn. 551; *Brown* v. *Stead*, 5 Simons, 535; Story's Eq. Pl. Sec. 196.) "The decree concluded the rights of the parties to the action, and the sale under it, consummated by the Sheriff's deed, passed, as against them, the entire estate held by the mortgagor at the date of the mortgage." (*Montgomery* v. *Middlemiss*, 21 Cal. 106.) Where a party in possession was made a party to the foreclosure suit, his rights, whatever they may have been, are cut off by the decree. (*Shores* v. *Scott River Co.*, 21 Cal. 139.)

But while the decree was valid and effectual as against the mortgagor, and bound all the right, title, and interest he may have had in the premises, if any, and also barred his right and equity of redemption, yet it did not affect the rights of his vendee, Berrian. The latter still held the equity of redemption, which, as against him, was not foreclosed by the decree, he not having been made a party. He still retained the right, notwithstanding the decree of sale, to pay the amount of the mortgage debt held by Foster, and thus clear the premises from the incumbrance to that extent. The title acquired by Fossatt, the purchaser at the Sheriff's sale, was subject to this right of redemption, and thus open to the contingency of being entirely defeated by such redemption. (Story's Eq. Pl. Sec. 75.) But this right of redemption should, as we have

already shown, have been asserted by action brought within the time fixed by the Statute of Limitations. No action of the kind appears ever to have been brought. The present action is brought by the legal representatives of the original mortgagee, and the plaintiffs do not pretend to claim any rights derived from the mortgagor or his grantee. The latter is the only person who has the right to disturb the title acquired by Fossatt and those claiming under him, on the ground of this unforeclosed right of redemption. The present plaintiffs have no right to make the objection or to attack the purchaser's title on that ground. If Berrian saw fit to waive or sleep on his rights and allow them to be barred, he alone is injured, and no other person can assert rights thus lost. The Statute of Limitations has been well said to be a statute of repose, putting an end to strife and litigation and bringing peace and security to the community. This applies especially to titles to real estate. Nothing so much retards the growth and prosperity of a country as insecurity of titles to real estate. During litigation respecting them the land becomes waste and unproductive, for parties will not improve while their title is doubtful. Consequently, no legislation has been more generally approved than that relating to the quieting of land titles and the limitation of actions respecting them. (Angell on Lim. 7, 8.) It is in this view that the Legislature of this State has prescribed the short period of five years as the most extended period of limitation of actions relating to real estate, and it is the plain duty of the Court to strictly enforce it for the good of society and as conservators of the law.

Lapse of time not only applies as a defense to an action, but it forms the basis of a new title acquired by prescription which is founded upon the statute. The term " limitation " is held to mean " the *time* which is prescribed by the authority of the law, during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment; or, the time at the end of which no action at law or suit in equity can be maintained." (Angell on Lim. 1.) " As a general doctrine it has too long been established to be now in the least degree controverted, that what the law deems a perfect possession, if continued without interruption during the whole period which is prescribed by the statute for the

Grattan *v.* Wiggins.

enforcement of the right of entry, is evidence of a fee." (Id. 396.) " It is also unquestionable, that where land has been sold under a claim to the fee for the time prescribed by the statute, and an entry is made by the party who has the written title, such party may be dispossessed by an ejectment brought by him who so held and claimed." (Id. 398.) "*A fortiori*, will the doctrine as above laid down be acted upon by Courts of Equity." (Id. 399.)

In the present case Fossatt entered into possession in good faith, in the belief that he had a good right and title to the property, with the intention to hold it against all the world. This possession was taken under and in pursuance of a deed which purported to convey the title under a claim of title in fee, and this possession was adverse not only to Cook and those claiming under him, but to all other persons, at its commencement, and so continued in Fossatt and those claiming under him for more than five years. We think it clear that these facts constitute a full defense to the claim sought to be enforced by the present plaintiffs, under the Statute of Limitations, though all of them may not be essential to constitute an adverse possession.

It is urged by Laurencel and Eldredge, that as Fossatt, under whom they claim, was the confirmee in the Courts of the United States, under the proceedings instituted by him therein, and as Cook never filed any claim in the National Courts, the title thus acquired by Fossatt cannot be affected by any claim of Cook or his legal representatives, referring us to the case of *Estrada* v. *Murphy* (19 Cal. 248). Under the view we have taken we deem it unnecessary to determine this question. But the fact that Cook and his legal representatives stood by for years and permitted Fossatt, under his purchase, to prosecute this claim, and expend a large sum of money in perfecting the title, without giving notice of his claim, or offering to bear the expense, or incur the risk and uncertainty of the litigation, is such fraudulent conduct and concealment as would induce a Court of Equity to refuse them all aid, at least, until they had fully indemnified Fossatt and those claiming under him for all these expenditures. (1 Story's Equity, 385, 388 ; *Bryan* v. *Ramirez*, 8 Cal. 467 ; *Farley* v. *Vaughn*, 11 Id. 237.) And it was clearly error in the decree, that this right of

Grattan *v.* Wiggins.

the defendants to be reimbursed these expenditures was not provided for.

The respondents insist that as the mortgage was executed prior to the passage of the Practice Act of 1851, the mortgagee was vested with all the rights of a mortgagee at common law, including the right to a decree of strict foreclosure—that is, a decree foreclosing all the equities of redemption, and declaring the absolute title vested in them, without any sale of the mortgaged premises. It is clear, however, that in no view of the case are they entitled to such a decree. The mortgage was executed after the passage of the Practice Act of 1850, and is therefore governed by it. The three hundred and ninth, three hundred and tenth, and three hundred and eleventh sections of that act, provide how a mortgage shall be enforced, and that the judgment " shall be, that the property mortgaged be sold for the satisfaction of the debt," which clearly takes away the right to a judgment of strict foreclosure under the common law.

They also claim that Cook was not affected with the notice of the suit of *Foster* v. *Wiggins,* because no notice of *lis pendens* was filed in the Recorder's office, in accordance with Sec. 27 of the Practice Act. Cook was not a purchaser or incumbrancer of the property, pending the action, and it is doubtful, therefore, whether this section applies to him. In *Richardson* v. *White* (18 Cal. 106) it was held to apply to those purchasing or taking incumbrances upon the property during the pendency of the action. (*Ault* v. *Gassaway,* 18 Cal. 205). But this section applies only to actions pending, and not to judgments and decrees rendered, which at common law, it would seem, were notice to all persons. (*Sorrell* v. *Carpenter,* 2 P. Wm. 482; *Searle* v. *Lane,* 2 Vernon, 37, 88; *Monell* v. *Lawrence,* 12 Johns. 534; *Wattington* v. *Howley,* 1 Dessaussure, 170.) In the present case, the attorney of Foster, who foreclosed the mortgage, testified that before he brought the suit he informed Cook that he was about to do so, to which Cook replied that he did not care, or something to that effect. Whether this was notice or not, it was sufficient to put him upon inquiry. The recording of the Sheriff's deed to Fossatt and the possession taken by Fossatt under it, were at least notice of his claim, but it

was nearly seven years afterwards that this action was commenced. The Statute of Limitations, in its effects upon the rights of the parties in this case, does not depend upon any question of notice to Cook of the pendency of the foreclosure suit.

On the twenty-third day of April, 1851, Wiggins, the mortgagor, conveyed all his right, title, and interest in the property to Berrian, who, on the thirtieth day of October, 1858, conveyed the same to Laurencel and Eldredge, and the respondents insist that by taking this conveyance the title of the latter became subject to the mortgage, and that they are estopped from contesting it.    The record does not disclose whether the deed to Laurencel and Eldredge was a warranty or a mere quitclaim.    In the absence of proof we could not presume that it contained any covenants of warranty.    There is, however, no evidence that the latter ever agreed with Berrian, or any one else, to pay the mortgage, or in any way recognized it as a lien upon the property.    At the date of this deed to them, Foster and they had been in the undisturbed possession of the premises, claiming the same as owners against all the world, for nearly seven years ; a sufficient length of time, as we have shown, to bar all equities of redemption.    They did not acquire the possession with or under this deed, and are not estopped from denying that they acquired any title under it.    By taking the deed they neither parted with nor lost any rights they had acquired under Fossatt, and by lapse of time either as against Berrian or the representatives of Cook ; nor did they thereby subject themselves to any obligations or burdens that did not exist against them before. A similar principle was established by this Court in *San Francisco v. Lawton* (18 Cal. 466).

It follows that the Court below erred in rendering the decree against the defendants who appeal.    The judgment is therefore reversed, and the Court below is directed to enter a judgment dismissing the action as against all the defendants, except Wiggins, and in favor of said defendants for their costs, and the cause is remanded for further proceedings against the defendant Wiggins.