# ORD AND WIFE *v.* DE LA GUERRA *et als.*

By Mexican law the husband was entitled to the use, control and disposition of the common property during coverture. Upon the death of the wife he was still entitled to the possession of such property, as surviving partner of the matrimonial union, and could sell or dispose of it in liquidation of community debts.

*Query:* whether, under Mexican law, the husband, after the death of the wife, could sell or dispose of the common property for purposes other than payment of community debts so as to pass title to third persons.

If the husband did so sell or dispose for other purposes, he could not, when called upon by the heir of the wife, set up as a defense a want of power to make such sale. The heir, by claiming his proportion of the proceeds, may affirm the sale.

Maria Antonio Carrillo, wife of Jose de la Guerra, and mother of plaintiff, died in 1843—there being a large amount of common property. Jose kept possession of this property, and sold a portion of it during his life, and died in 1858, leaving a will appointing defendants his executors, and making them legatees of most of his property. Plaintiff now sues defendants for her share of the property disposed of by her father, Jose, and of that undisposed of and which came into the hands of defendants: *Held,* that, upon the death of the wife, the children of the marriage, plaintiff among them, succeeded to her interest in the common property, subject to the payment of debts; that Jose, the father, became trustee of plaintiff for this interest; that chancery has jurisdiction to settle the account, and ascertain the share and interest of the heirs; that no administration upon the wife's estate was necessary, the husband holding as surviving partner of the community; and that the remedy of plaintiff, as heir of her mother, is governed by the laws now existing, and her rights, whether arising out of a past system or the present, can be enforced just as would be enforced the rights of a representative at common law claiming of a surviving partner in a commercial partnership distribution of partnership effects left, after settlement of firm debts, in the hands of such survivor.

*Held,* further, that Jose, the father, held as surviving partner, and not as owner, and that he could not by his own act, without the consent or laches of the heir or representative change, for his own benefit, the tenure by which he held; that he, as trustee, could not silently disavow the trust, and set up an exclusive holding in himself; and that his holding would become adverse only from the time when notice is given the beneficiary or *cestui que trust* of the individual claim of the trustee.

*Held,* further, that, if this were not so, still Jose, the father, held the property, in presumption of law, as well for the heirs as for himself; that they were tenants in common with him; that his possession was their possession; and hence he could not merely by his acts of control or dominion as of his own property, however unequivocal, change the title and tenure, unless such acts and claims were brought directly to the knowledge of the heirs and they assented or acquiesced.

The Statute of Limitations does not run against a trust of this kind.

Although demurrer lies when the facts stated in the complaint show the action to be barred by the Statute of Limitations, the bar of the statute must clearly appear.

APPEAL from the Fourth District.

Bill against defendants as executors of the last will and testament of Jose de la Guerra, deceased, to recover the share of the female plaintiff in the estate of her mother. The substance of the complaint is, that in 1804, Jose de la Guerra and Maria Antonio Carrillo intermarried in Santa Barbara, California, and lived together until December, 1843, when she died intestate at Santa Barbara, leaving him surviving; that by said marriage there were thirteen children, the female plaintiff and the defendants among them; that said Jose and Maria acquired by their joint skill, industry and care, during their marriage, a large amount of common property, real and personal, valued at about $300,000, the true amount, kind and description of which is unknown to plaintiffs; that at the death of his wife, said Jose de la Guerra took possession of all her estate, to wit: the one undivided half of said common property, and held and controlled the same mixed with his estate, to wit; the other half, up to his death in February, 1858; that at the death of her mother, the female plaintiff became entitled to one-tenth part of her mother's half of the community after payment of community debts, which were small—three of said children having died before their mother; that said Jose settled with all the other heirs for their interest in the mother's estate, and received releases therefor, leaving plaintiffs as the only persons claiming any portion of the estate; that previous to and at the death of her mother the female plaintiff was the wife of one Jimeno, who died December 23d, 1853, and that she married her coplaintiff, Ord, in October, 1856; that her father never accounted to her or her husband for her share in her mother's estate, and never made or filed in Court any inventory thereof or administered thereon, though requested so to do in December, 1857; that after the death of the mother said common property, or the greater part of it, remained undivided in the hands of said Jose until his death in February, 1858, when it passed

Ord *v.* De La Guerra.

undivided into possession of defendants as executors of the last will and testament of said Jose, and that they are now in possession of the successions or estates of both the father and mother; that at his death this female plaintiff became entitled, as heir at law of her mother, to the one-tenth of her estate left undisposed of by the father, with its fruits, profits and increase from the death of the mother; that defendants now pretend that the property received by them as such executors belongs to the estate of said Jose alone, and that the heirs of his wife never had any interest therein, and neglect and refuse to file an inventory of the mother's estate or render any account of it, or give plaintiff possession of any portion thereof; that plaintiffs have presented to said executors their claim for $88,000 as the one-tenth of the mother's estate, with the increase and profits, and the claim has been rejected, and that the estate of said Jose is indebted to plaintiffs in the sum of $88,000.

Prayer, that defendants be ordered to make an inventory and account of the property acquired by said Jose and Maria during their marriage, and of the estate she left at her death in 1853; also an account of the administration by said Jose of the estate acquired in community from her death to the present time, showing the sales, donations, advances, disbursements, etc., if any, the losses and gains, rents and profits, and generally a specific account of all the doings of said Jose in the premises; also a full account of the estate which has come into their hands; and that plaintiffs "have judgment for damages against said executors of said estate of said Jose de la Guerra," in the sum of $88,000, and for general relief.

Defendants demurred on the grounds—First, that the Court has no jurisdiction over the subject matter of the action in this; 1st, that the Probate Court, if any, of the proper county has jurisdiction of the subject matter, as also to compel the inventory and accounts asked for; second, that the complaint does not state facts sufficient to constitute a cause of action in this: 1st, that the property in question was subject to the disposition of said Jose alone, and that plaintiffs have no interest in the same; 2d, that it is not alleged that the property was acquired by purchase or by the joint labors of said husband and wife; 3d, that it is not alleged that the one-tenth claimed by plaintiffs is their proper share after the

Ord *v.* De La Guerra.

payment of community debts in due course of administration; 4th, that there is no particular description of the real estate, nor any allegation as to the value of the personal estate separately. Third—that the claim of plaintiffs "was barred by statute in the life-time of said Jose, to wit: from December 26th, 1843, when the claim is alleged to have accrued by the death of his wife, to the eleventh of February, 1858, when he died;" and that said claim was barred before bringing this suit, that is, by the lapse of time from December 27th, 1843, to July 6th, 1858, when the complaint was filed. Fourth—That there is a defect of parties plaintiff, in this, that plaintiff, J. L. Ord, cannot sue jointly with his wife. Fifth—That there is a defect of parties defendant, in this, that the other heirs should have been made defendants.

Demurrer sustained, and final judgment dismissing the complaint. Plaintiffs appeal.

*P. Ord,* for Appellants.

I.  The Courts of Probate have not exclusive jurisdiction of matters concerning the estates of deceased persons. (*Wilson* v. *Roach,* 4 Cal. 362; *Clark* v. *Perry,* 5 Id. 60; *Deck* v. *Gerke et al., Adm'rs.,* 12 Id. 433.)

II.  The complaint states sufficient facts. Among other causes, the plaintiffs allege an interest, as heir, in an estate of a deceased person; that defendants are executors, and have not filed an inventory of the same, and have given no bonds; that they are wasting it; that they have not accounted, and refuse to pay or account, and pray for an account; and that they be required to give bonds, etc., and general relief. These are facts enough.

III.  Defendants rely principally on the Statute of Limitations; and on this ground the Court below sustained the demurrer. The answer is, that the complaint shows that on the twenty-sixth of December, 1843, the plaintiff was a married woman, when her mother died; that this disability continued until her husband's death, on the twenty-third of December, 1853; that she married the coplaintiff and present husband on the thirtieth of October, 1856. The Statute of Limitations does not run against a married woman. (Schmidt's Civil Law, art. 1409.) From the death of her first

husband the statute, perhaps, commenced running.  Her second marriage interrupted it.  (*Orso* v. *Orso*, 11 La. 62.)  *Contra non valentem agere nulla currit prescriptio.*  But if it did not, she had five years after disability to bring this action.  Her first husband died in December, 1853, and she filed her complaint on the sixth of July, 1858—within the time limited.  (Stat. Lim. sec. 16; Wood's Dig. 47.)  Besides, down to the time of the husband's death, in 1858, he was holding the wife's share of one undivided half of the community property, belonging to her heirs, under an implied trust, for their benefit.  By the Mexican law, when a surviving husband keeps, undivided, the common property of the marriage, belonging to the heirs of the deceased wife, the community or partnership of property will continue, if it can be presumed that the heirs of the deceased wife acquiesced.  (Escriche Dic. Verb. *Bienes gananciales*, 368.)  The partnership continued, then, until February, 1858, when the husband died; and then the plaintiffs' cause of action accrued.  (1 Febrero, Tit. 5, 16, 17, p. 82.)  The father was a cotenant, until his death, with the heirs of the deceased mother.  (1 Domat, 886-7.)  The Statute of 1855 repealed in part the Statute of 1850.  (*Billings* v. *Hall*, 7 Cal. 1.)

IV.  The husband is not, perhaps, a necessary party; but he is a proper party.  (Prac. Act, sec. 7.)

V.  The complaint alleges that all the heirs of the deceased wife have been settled with and paid, except herself.  Having no interest they are, therefore, neither necessary nor proper parties.

*Gregory Yale*, for Respondents.

I.  The call for an inventory and account, under the facts stated in the complaint, belongs to the exclusive jurisdiction of the Probate Court.  By the act for the settlement of the estates of deceased persons, from section two hundred and twenty-two to two hundred and twenty-eight, inclusive, at the third term after the appointment, and thereafter, at any time when required by the Court, either upon its own motion or upon the application of any person interested in the estate, the executor shall render for the information of the Court—1st, a verified exhibit of the money received and expended; 2d, the amount of all claims against the estate; 3d, the

names of the claimants; and 4th, all other matters necessary to show the condition of its affairs. This is a very comprehensive provision, and would answer, if complied with, all the purposes of the discovery sought here. The provisions in these sections give authority to compel an exhibit, and to contest it. If there is a failure, then a revocation follows, with, of course, under other provisions of the act, a new appointment, when the information can be had. Equity could not do this. These provisions must be entirely ignored, and the jurisdiction of the Probate Court under them disregarded, if equity assumes such powers as are here given. This Court has not assumed jurisdiction in probate matters, unless under some peculiar circumstances, as in *Gerke's case* (12 Cal. 433). Nothing peculiar exists here as to personalty; and as to realty, plaintiffs have two remedies at law. If cotenants, and never ousted, the remedy is by partition. If ousted by the executors as such, or as heirs and tenants in common, by ejectment; if the realty has been sold either by the common ancestor, after the death of the mother, or by the executors, the title could not be affected by the transfer.

II.    As to the Statute of Limitations : the mother died in December, 1843—the father in February, 1848. The statute commenced running on the day of its date, in April, 1850, but was saved by the coverture till December, 1853, when Jimeno, the first husband died, and was barred in December, 1857—four years and two months. The second marriage did not revive the disability— it must have existed when the right of action accrued. (Acts of 1850, sec. 28.)

The doctrine of trusts does not aid plaintiffs. This is an implied, not a direct trust. Implied trusts are not relieved from the operation of the statute. (Ang. on Lim. 161, sec. 1.) The rules are —1st, where there is a direct trust created, cognizable exclusively in equity, and where the relation between trustee and *cestui que trust* is not disavowed, the statute does not apply ; and the principle is, that the possession is consistent with the title admitted, and is not adverse : 2d, but if the trust is disavowed, and the relation is denied, the possession becomes adverse, and the claim is not consistent with the relation, and the statute applies. The principle is

Ord *v.* De La Guerra.

the same.    3d. But if the trust never was acknowledged, and is not direct, but implied, where the holder claims in his own right, and never did acknowledge the *cestui que trust* as having title, the statute attaches—and there is no case to the contrary.    The rule applies in equity as well as at law.    (Ang. on Lim. 171, sec. 9, 174, sec. 13 ; *Werner* v. *Barnett,* 4 Washington, C. C.)    Here absolute ownership was assumed by the testator over all the property from its acquisition, and was never held by him in any other sense.

III.    The mere statement in the complaint, that this is community property, is an insufficient averment because a conclusion of law. The character of the grants should have been stated, or they should have been to some extent exhibited, so that the Court would be enabled to determine whether by its decisions—such as *Scott* v. *Ward* and *Noe* v. *Card*—it was separate or common property.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

This bill was filed by the plaintiffs, one of whom is the daughter of Don José de la Guerra, deceased, and of Maria Antonia Carrillo, his late wife.    The bill states that the mother of the female plaintiff died in 1843, her husband surviving her ; that during the coverture property, real and personal, to a large amount, was acquired by the joint labor, etc., of these spouses, as community property ; that this property was held, possessed, and disposed of by the survivor during his life, in part, and a portion left at his death ; that he died in 1858, leaving a will, in which the defendants were made executors, and also legatees of the larger portion of the estate ; that the mother of the female plaintiff left several children surviving her, but that these have been settled with, and have released their claims on their mother's estate, except the plaintiff; and that, as to her, no settlement has been made, but that she is still entitled to her interest.    Some other averments are made, which it is not necessary to notice in this place.

The case went off, on demurrer of defendants to the complaint, in the Court below ; and we now proceed, on this appeal, to consider the main causes of demurrer.

6

1. By the Mexican law, as we understand it, the husband was entitled to the use, control, and disposition of the common property during the coverture. Upon the cessation of the matrimonial union by the death of the wife, the husband might still continue the possession of it, as surviving partner of the matrimonial union, and might sell or dispose of it in liquidation of the community debts. It is not necessary to decide whether, under the Mexican system, he could sell or dispose of it for other purposes, so as to pass title to third persons, for the bill in this case asserts that portions of it were disposed of by him; and neither he nor his representatives could set up a want of power so to act in answer to a demand for settlement of the share of the proceeds coming to the heir. The heir, by this claim, might affirm the sale, and hold the vendor responsible for the price or her proportion of it. Upon the death of the wife, the children of the spouses succeeded to the interest, subject to the payment of debts, etc. A Court of Chancery has jurisdiction to settle the account and ascertain the share and interest of the heirs. The heirs do not claim as succeeding to the title of the father, but as succeeding to the title of the mother. There is no necessity, as we held in the case of *Packard* v. *De la Guerra*, for taking out administration upon the mother's estate. The husband holds really as survivor of this matrimonial copartnership, and as the remedy of the heir is governed by the laws now existing, we see no difficulty in giving to the right of the heir, whether arising out of a past system or the present, the same remedy which we would apply in the case of a representative at common law claiming of a surviving partner in a commercial partnership, distribution of partnership effects left, after the settlement of the firm debts, in the hands of such survivor. He holds not as owner, but as partner: first, to pay the debts—a duty devolving upon him by his relation to the deceased partner and to the creditors; and secondly, as trustee for the representatives of the deceased, so far as their interest in the residue of the estate is concerned. His possession, lawful when assumed, continues for the purposes of the partnership and the duties of his trust; and he cannot, by his own act, without the consent or laches of the heir or representative, change, for his own benefit, the tenure by which he holds. In all such cases we under-

stand the rule to be that the trustee cannot silently disavow the trust, and set up an exclusive holding in himself. The holding becomes adverse only from the time when notice is given the beneficiary or *cestui que trust* of the individual claim of the trustee.

But if this were not so, the deceased was holding the property, in presumption of law, as well for the heirs as for himself. They were tenants in common with him in it; his possession was their possession; and he could not, merely by his act of control or dominion, as of his own property, however unequivocal, change the title and tenure, unless such acts and claims were brought directly to the knowledge of the heirs, and they assented or acquiesced.

It is, moreover, held by the civil law that when the husband keeps undivided the common property after the death of the wife, it is presumed to be done with the acquiescence of the heirs, and the effect is to continue the partnership. (See *Escriche's Dic.*, *verb. Bienes Gananciales*, 368.)

In the aspect in which this case is presented, it is the case of a claim not to the estate left by Don José De la Guerra, but a claim to the estate of his deceased wife, to which estate the plaintiff succeeded upon her mother's death; the surviving husband being the trustee of the female plaintiff in this regard, and responsible to her as such. The claim of the plaintiff is to the share of the property disposed of by the trustee, and to that undisposed of and in the hands of that trustee during his life, and which came to the executors after his death. This claim seems to have been presented to the executors—at least it is so averred in the bill; and we think that the general principle giving chancery jurisdiction of cases of trust applies here with special force, for not only, according to the bill, is there a trust, but an account is necessary, and also a discovery of assets.

What we have said disposes of the question of the Statute of Limitations, which has no application, for the reason that it does not run against a trust of this sort.

While we have held that a demurrer will lie when the complaint shows the bar of the statute, yet it must clearly so appear upon the facts stated. In what different aspect the answer may present this defense we cannot know; and upon the case as it is finally so pre-

sented, the defendants may still insist upon this defense if the facts hereafter educed vary from those in the complaint.

Some other points are made, but we think that they are not well taken.

Judgment reversed and cause remanded.