DESMORNES *v*. THE UNKNOWN HEIRS OF ADOLFO DESMORNES.

## APPEAL from the District Court of Humacao.

No. 101.—Decided June 18, 1907.

ALLEGATIONS—PRESCRIPTION.—To allege the law of prescription as a defense is a personal privilege and must be made expressly either by demurrer or answer, as otherwise it will be deemed to have been waived.

ID.—INTERRUPTION.—Generally the prescription of actions, according to our law, is subject to evidence of its interruption, and such evidence cannot be offered if prescription has not been expressly alleged, and therefore a judge cannot, *ex officio*, hold that an action is barred by prescription.

ID.—NATURAL CHILD—ACTION OF FILIATION—WANT OF CAUSE OF ACTION—WANT OF LEGAL CAPACITY TO SUE.—The fact that in the complaint the age of the plaintiff is not stated, for the purpose of showing whether he has the necessary capacity to prosecute an action for filiation involves a want of legal capacity to sue, and cannot serve as a ground for demurrer alleging that he has no cause of action.

ID.—EVIDENCE OF FILIATION—CERTIFICATE OF BAPTISM.—Although the statements contained in a certificate of baptism do not in themselves constitute evidence of filiation, they constitute, nevertheless, an element of proof which may be considered, which taken together with the other evidence introduced at the trial, may serve to establish the right of the party.

STATUS OF NATURAL CHILD.—In order to possess the status of a natural child it is only necessary that there be a continuation of facts showing one person to stand in the uninterrupted relation of natural child of another person.

APPEAL—REVERSAL OF JUDGMENT OF THE INFERIOR COURT—JUDGMENT.—Where the judgment of the inferior court is reversed on appeal, the appellate court must proceed to render such judgment as should have been rendered in the first instance.

The facts are stated in the opinion.

*Mr. Vías Ochoteco* for appellant.

*Mr. Hawkins* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The plaintiffs Josefa and Isabel Desmornes, the latter married and a resident of Patillas, and the former single and a resident of San Juan, both of legal age, filed a complaint in the District Court of Humacao, under date of March 20, 1906, alleging:

"First. That aforesaid Adolfo Desmornes y Bange, a native and resident of the island of Vieques, died a bachelor in said island on

the 2d of November, 1905, without executing a last will and testament in any of the forms recognized by law.

"Second. That when he died, Desmornes did not leave any legitimate descendants or ascendants who could show a preferential right to the inheritance of the deceased, he having left only two natural and illegitimate daughters, had from his relations with Andrea Alvarez, which daughters were baptized in the Catholic Church of the Immaculate Conception and Apostle St. James, of the town of Isabel Segunda, in aforesaid island, the acknowledgment of the one named Isabel, as a natural child, made by her father, the deceased Desmornes, appearing in the certificate of her baptism.

"Third. That these daughters, to whom allusion is made in the foregoing allegation, are the plaintiff's in this action, and during the lifetime of Adolfo Desmornes they were always recognized and treated by him as his daughters, he bestowing upon them all the protection, care and affection which a good father usually bestows upon his children.

"Fourth. That in consequence of this behavior, openly observed toward them by Desmornes, the plaintiffs herein have always been considered by almost all the residents of Vieques as the acknowledged children of that gentleman, who in all his social acts never refrained from avowing that said plaintiffs were his own children had during his carnal union with his fellow resident Andrea Alvarez.

"Fifth. That the deceased Adolfo Desmornes, from December 29, 1893, to February 16, 1904, addressed several letters to the plaintiffs herein, all in his own handwriting, wherein is clearly revealed his fatherly affection for them, he there calling them his dear daughters and evincing a desire to satisfy their most urgent needs.

"Sixth. That upon recording in the parish of Vieques the baptism of the plaintiff, Isabel Desmornes, on the 14th of October, 1865, her father, Adolfo Desmornes, presented a declaration, written and signed by himself, wherein he authorized the parish priest to enter in the parochial books his explicit acknowledgment of the aforesaid Isabel, and this declaration, signed by Desmornes and filed in said parish, has disappeared or been lost, all the efforts made to recover this direct evidence of such acknowledgment having proved unsuccessful.

"Seventh. That the plaintiffs herein have displayed unceasing efforts to find out whether there existed other persons who might have a right to intervene as parties to this action, and according to the information of persons who were on the most intimate terms with the deceased Adolfo Desmornes, such as Guillermo Carrera and the merchant

Antonio Torres Barba, there does not exist in Porto Rico anybody having a right or title to contest the just claim of the plaintiffs.

Wherefore, the aforesaid plaintiffs, Isabel and Josefa Desmornes, through their attorney, Juan F. Vías Ochoteco, pray this court that in due time it be pleased to render judgment in their favor and against the defendants, declaring said plaintiffs to be the natural acknowledged or illegitimate daughters of Adolfo Desmornes y Bange, with all the rights which the law bestows upon this class of children with reference to the person and property of their natural parents, the expenses and costs to be taxed against those who may oppose the present action.''

In consequence of this action a request was made for the publication of edicts in the newspaper *El Boletín Mercantil de Puerto Rico,* which was done, and August Burnet, claiming to be a nephew to Adolfo Desmornes, appeared before the court and denied that the plaintiffs were acknowledged natural daughters of Adolfo Desmornes, or had ever been acknowledged as such, and closed with the prayer that he be declared the sole heir with a right to inherit all his property which upon his death amounted to $7,745, and that at the same time the plaintiffs be adjudged to have no right to aforesaid property or any part thereof.

There appeared also before the Humacao Court Modesta Ramos, represented, she says, by her mother Isadora Ramos, and Bartola Delfina, both represented by Attorney Salvador Fulladosa, alleging that they had the same right as the plaintiffs because their status had constantly been that of natural daughters of Adolfo Desmornes, for which reason they join in the complaint and ask that the same declaration be made in their favor as natural and illegitimate daughters of said Desmornes.

The trial was held on July 29, 1906, the plaintiffs appearing through their attorney, and Augusto Burnet through his, The People of Porto Rico being represented by the *fiscal.* The court after receiving the documentary and oral evidence produced, and hearing the arguments of the attorneys, pronounced judgment on August 20, 1906, holding that the law

and the facts were against the plaintiffs, wherefore it dismissed the complaint, with costs taxed against the plaintiffs, and ordered that a writ of execution be issued against their property to satisfy the judgment.

This decision is based on a written opinion of the judge of the Humacao Court, which it is of importance to know in its entirety in order to form a clear conception as to the ground he had for deciding in the manner hereinbefore stated.

Said written opinion reads as follows:

"This is an action instituted by Josefa and Isabel Desmornes against the unknown heirs of Adolfo Desmornes, asking that they (the plaintiffs) be declared natural or illegitimate daughters of Adolfo Desmornes y Bange, deceased, in which action, by order of this court, publications were made for a period of 60 days, summoning those persons who believed they had rights to the estate, within which period appeared Augusto Burnet, claiming to be a nephew of the predecessor in interest, and answered the complaint. On motion of both parties the court set June 29, 1906, for the hearing of the case, at which the plaintiffs appeared, represented by Attorney J. F. Vías, The People of Porto Rico by the *fiscal,* and the aforesaid defendant by Attorney W. H. Hawkins; and the court, after receiving the documentary evidence, and hearing the testimony of witnesses and the arguments of counsel, reserved its decision.

"The evidence produced in this case by the plaintiffs refers to acts executed by Adolfo Desmornes at different dates and during the period of time intervening from the year 1865 to the year 1905.

"According to law 11 of Toro—that is, law 1, Title V, Book X, of the *"Novísima Recopilación"*—the action to claim filiation may be instituted at any time during the life of the father or after his death; according to the Civil Code of 1889, which repealed the Laws of Toro, this action can be instituted only during the life of the presumed father; and under the Civil Code in force the action to claim filiation may be filed at any time within two years after the child has become of age.

"The death of the presumed father of the plaintiffs occurred in November, 1905, prior to the institution of this action, and inasmuch as from the evidence it appears that the plaintiffs reached their majority considerably more than two years before the present Code went into effect, under either law the action has prescribed. But the plain-

tiffs do not pretend that the provisions of the Civil Code in force or of the previous one are applicable to the case, but they affirm that law 11 of Toro is the legislation upon which the judgment must be based; that before the Civil Code of 1889 took effect the acknowledgment of children was regulated by the legislation prior to said legal text; and that to apply the Civil Code in force or the previous one would be to violate a right acquired, and they cite the decision of the Supreme Court of Spain of July 9, 1896, which reads as follows:

"According to rule 4 of the transitory provisions of the Code, actions and rights arising before the publication of the latter shall continue with the extension and according to the terms recognized by prior legislation.

"From the foregoing, the right of the minor thus situated, to be acknowledged as a natural child, is subject not to articles 131, 133 and 135 of the Code, but to law 11 of Toro, or law 1, Title X, of the "*Novísima Recopilación*".

"The fourth basis of the provisions referring to the publication of the Civil Code of 1889 reads:

"The juridical relations derived from marriage as regards the persons and property of the spouses and of their descendants, paternity and filiation, successive parental authority of the husband and the wife over their children not emancipated, civil effects of the contract, and, in fine, all such as constitute family rights, shall be determined in accordance with the essential principles upon which is based the present legal status, without prejudice to the provisions of bases 17, 18, 22 and 23."

"The decision of the Supreme Court of Spain of July 9, 1896, and the fourth basis, cited above, do nothing else than affirm a principle of law recognized from time immemorial by the jurisprudence of all civilized countries, namely, that a repealed statute is as if it had never existed, except as to transactions passed and closed before the repeal, but the repeal leaves inalterable all the civil rights of the parties that were acquired under the law.

"It is not the date of the birth of the child which determines the legislation applicable to the action to claim filiation, but the date on which the acknowledgment was made; on the latter date arises the right, and not on the former.

"The court is of opinion that the proof of acts done by Adolfo Desmornes at the time specified is the last that the court can consider in rendering judgment, wherefore it directs that judgment be given in

favor of the defendant.   Humacao, P. R., August 20, 1906.   Charles E. Foot, Judge of the District Court of Humacao.''

From the judgment rendered an appeal to this Supreme Court was taken by the plaintiffs, Isabel and Josefa Desmornes, and here they appeared through their attorneys and filed a statement of facts aproved by the judge of the lower court on November 1, 1906.

Thereafter, the appellants and the respondent Burnet presented their briefs and at the hearing set up orally such arguments as were deemed favorable to their respective right.

The first question that we should study and decide is whether the judge could declare extinguished the action of the plaintiffs to claim the right referred to in the complaint, though the prescription of said action has in no manner been alleged.   In other words, whether the judge on his own motion could set up prescription as ground for such decision as the one he gave.

The only defendant who appeared and filed an answer to the complaint was Augusto Burnet, and this gentleman denied the right of the plaintiffs, in substance, without alleging anything whatsoever in reference to prescription.

Section 109 of the Code of Civil Procedure provides that if no objection be taken, either by demurrer or answer, the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action.   And in corroboration of this we have section 128 of said Code which determines the manner in which the statute of limitations should be pleaded, and if such allegation be controverted, the party making the plea must establish, on the trial, the facts showing that the cause of action is so barred.

So then, in allowing, on his own motion, the existence of the prescription, the judge has ignored the duty which the law imposes upon the defendant to allege and prove said

prescription, in a proper case, and the right of the plaintiffs to deny such allegation.

And this cannot be done if the good order of the procedure is to be observed.

"The defense of the statute of limitations is a personal privilege of the debtor which he may assert or waive at his option, but it must be set up in some form either by demurrer or answer, or it will be deemed to have been waived." (*Grattan* v. *Wiggins*, 23 Cal., 25; *Kelley* v. *Kriess*, 68 Cal., 213.)

"Where it clearly appears upon the face of the complaint that the cause of action is barred by the statute of limitations, the objection may be taken by demurrer; otherwise it must be taken by answer." (*Ord* v. *de la Guerra*, 18 Cal., 75; *Barringer* v. *Warden*, 12 Cal., 314; *Miles* v. *Thorne*, 38 Cal., 335; *Cameron* v. *S. Francisco*, 68 Cal., 391.)

Thus the law and jurisprudence of the Supreme Court of the State of California, consider the plea of prescription to have been waived, when it is not set up either by demurrer or answer.

And the reason is obvious. The prescription of actions is subject in general terms and under the revised and previous Civil Code, to the proof of its interruption and such proof could not possibly come forward when it has not been alleged in any form by the party defendant, or, briefly, when it has not been the subject of discussion.

There is another reason of a moral order, stated in a few words by Escriche in his *"Diccionario de Legislación y Jurisprudencia,"* and to which counsel for the appellants refers in his "Memorandum of Authorities":

"Judges," it says, "cannot supply on their own motion the means of prescription in civil matters, for the party who does not allege it may yield to the cry of his conscience".

And we think that from the foregoing it is evident that an error was committed by the trial court, and its judgment must be reversed.

It might be argued that the facts do not constitute a cause of action, because the plaintiffs do not state in the complaint that they are 23 years of age so as to be in a position to exercise the action allowed them by section 199 of the revised Civil Code.

But this has not been alleged in the answer either, and at all events, such allegation would constitute a demurrer for lack of legal capacity to sue, which must not refer to a lack of facts sufficient to constitute a cause of action. (*De Belt v. Carter,* 31 Ind., 355; *People* v. *Crooks,* 53 N. Y., 468; *Pomeroy on Remedies,* sec. 208; See Pomeroy, Code of Civ. Proc. of Cal., p. 209.)

But we have said that we had before us for consideration a statement of facts approved without amendments by the Judge of the District Court of Humacao, and we must bestow due attention upon it, in order to ascertain therefrom whether or not the right claimed by the plaintiffs has been proven.

Eleven witnesses of good standing have testified at this trial and all agree that the plaintiffs, named Josefá and Isabel, were publicly treated and recognized as daughters by Adolfo Desmornes, it being worthy of note that among these witnesses are to be found the physician, Guillermo Carreras, who attended said Desmornes during his last illness, José A. Vera, collector of internal revenue at Vieques, and Modesto Ríos, Justice of the Peace of said place.

The first-mentioned witness testified that he had told Desmornes to settle his affairs and the latter had on several occasions replied: "I have no affairs to settle, Doctor, as I have no heirs except my daughter Isabel," and that the latter lived in his house and always waited on him like a good daughter.

The second witness—namely, the collector—declares that as Don Adolfo was owing some taxes, he came to his office one day and said to him: "I shall send my daughter to pay them," and that a few days later his daughter Pipía, whose name he believes is Josefina, or rather, it would seem, Isabel,

appeared and paid in the name of her father the taxes for the first six months.

The Justice of the Peace states that he has been discharging the duties of said office for seven years and he knows that Desmornes, who was a bachelor, had two daughters, one nicknamed Pipía, who seems to be Isabel, and the other named Josefina; that he once advised him to make his will and he replied that his daughter Pipía would settle his affairs; that the latter tended him during his last illness, and that on a certain occasion Desmornes had lamented, while in company of the witness, that his other daughter, Josefina, should one day have gone to see him and immediately left him, although he was sick.

All the other witnesses substantially testify as to the truth of the public consideration and the status of daughters bestowed upon the plaintiffs by Adolfo Desmornes, it being, moreover, proven that he died a bachelor.

There are, moreover, 16 letters which, according to the testimony of Isabel, were lost, and when Desmornes died, she found them in the bottom of a trunk; that in 1893 she agreed with her sister to demand from their father an acknowledgment of their filiation, based upon these letters, but as they were lost, nothing could be done at that time, although all the people of Vieques know that Desmornes was her father and that he treated her as such.

Of these 16 letters, the handwriting and signature whereof have been identified by several witnesses as those of Desmornes, some are addressed to Pipía, who is Isabel, and others to Josefina, and in all of them is revealed the intimacy and affection of a father; in all he begins by addressing them as "daughters" and closes calling himself "father", and refers to his illness and financial circumstances which rendered it impossible for him to send them any money.

But with respect to Isabel there is an important fact in her favor which, by itself alone, would not be sufficient to establish her right, but taken in connection with what we have

already stated, inclines the mind to consider favorably her claim as really the daughter of Adolfo Desmornes.

I refer to the certificate of baptism, a copy whereof has been filed with the record. It is stated therein that Isabel is a natural child of Adolfo Desmornes and that she was born on the 29th of November, 1865.

This special circumstance does not appear in favor of Josefina, and perhaps the evidence with respect to her has proved somewhat weak; but the fact that, instead of opposing her, Isabel has made common cause with her, both exercising the same action and claiming the same right under the direction of the same counsel, such absolute agreement would seem to show that they were sisters and that they always enjoyed the same consideration as daughters of the aforesaid Adolfo Desmornes.

The possession of the status of a natural child requires only the continuation of acts which present a person in the uninterrupted relation of a natural child, to another person, and the evidence taken shows this persistent relation of facts.

Some witnesses refer to other children, and there is on file with the record, as stated before, a petition from Modesta Ramos and Bartola Delfina, signed by Attorney Salvador Fulladosa, wherein it is declared that they join in the claim of Isabel and Josefa, because they have the same right, having been in continued enjoyment of the status of children of Adolfo Desmornes.

But neither of them have furnished any proof, and they are not even mentioned in the judgment, nor have they taken an appeal therefrom.

We cannot therefore, make any declaration whatsoever, with respect to them.

Now then, as regards Isabel and Josefina, the Humacao court made no declaration with reference to the substance of the right claimed by them, but they presented their evidence and the same has been formally submitted to us for study and consideration.

This evidence is wholly favorable to them.

The Act approved March 8, 1906, which took effect on April 1 of said year, and which amended section 306 of the Code of Civil Procedure, says:

"When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judgment, order or decree as the court below should have rendered, except, etc.   *   *   *."

So then, while reversing, as should be done, the judgment appealed from, without a specific imposition of costs, another judgment should be rendered declaring that Isabel and Josefina Alvarez are natural daughters of Adolfo Desmornes y Bange, and must be held to have been acknowledged as such by him, and that they are entitled to succeed him, with all the rights which the Civil Code in force at the time of the death of said Desmornes, confers upon those of their class.

*Accordingly decided.*

Chief Justices Quiñones and Justice Hernández concurred. Justices MacLeary and Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

I dissent because the necessity in this case for bringing an action within the time limited by section 199 of the Civil Code was a condition precedent to the attainment of any rights by the complainants, and being such a condition precedent, that the running of the statute of prescription could not be interrupted.

Under my view of the case, it was incumbent on the court to declare the action prescribed as soon as it appeared in the pleadings or in the proof that the complainants were over 23 years of age.

In this case, moreover, the battle in the lower court was waged over the question of prescription. That court found that the action had prescribed, and even if the statute was

capable of interruption or being waived, some regard was due to its action in the premises. The majority opinion is based upon the fact that there was no plea of prescription, and while this was true, when the case was sent back, the lower court should have been left free to permit amendments in order to raise the question really decided by it.

I am authorized to say that Mr. Justice MacLeary concurs in this dissent.