DESMORNES *v.* HEREDEROS DESCONOCIDOS DE ADOLFO DESMORNES.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 101.—Resuelto en junio 18, 1907.

ALEGACIONES—PRESCRIPCIÓN.—La alegación, como defensa, de la ley de prescripción, es un privilegio personal de la parte, y debe alegarse especialmente, ya en excepción previa ó en la contestación, pues de lo contrario habrá de estimarse renunciada.

ID.—INTERRUPCIÓN.—La prescripción de las acciones está sujeta en términos generales, y dentro de nuestro derecho vigente, á la prueba de su interrupción, y esa prueba no puede ofrecerse si aquélla no se ha alegado especialmente, por lo que no es posible aceptar que el juez pueda, de oficio, fundarse en la prescripción para declarar extinguida la acción ejercitada.

ID.—HIJOS NATURALES—ACCIÓN DE FILIACIÓN—FALTA DE CAUSA DE ACCIÓN—FALTA DE CAPACIDAD LEGAL PARA DEMANDAR.—La circunstancia de que en la demanda no se exprese la edad del demandante, á fin de determinar si es menor de edad y si está en condiciones de poder ejercitar la acción de filiación, envuelve una *falta de capacidad legal para demandar,* y no puede dar lugar á la excepción de falta de causa de acción.

ID.—PRUEBA DE LA FILIACIÓN—PARTIDAS DE BAUTISMO.—Aunque las declaraciones contenidas en una partida de bautismo no constituyen por sí solos prueba de la filiación, son, sin embargo, un elemento probatorio que puede estimarse y si se integrara con la demás prueba aportada al juicio, serviría para establecer el derecho de la parte.

ID.—POSESIÓN DEL ESTADO DE HIJO NATURAL.—La posesión de estado de hijo natural sólo requiere la continuación de hechos que presenten á una persona en la relación no interrumpida de hijo natural de otra persona.

APELACIÓN—REVOCACIÓN DE LA SENTENCIA DE LA CORTE INFERIOR—SENTENCIA.—En los casos en que se revocare en apelación la sentencia de la corte inferior, el Tribunal Supremo debe proceder á pronunciar la que debió haberse dictado en primera instancia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Vías Ochoteco.*

Abogado del apelado: *Sr. Hawkins.*

EL JUEZ ASOCIADO SR. FIGUERAS, emitió la opinión del tribunal.

Las mencionadas Josefa é Isabel Desmornes, ésta casada y vecina de Patillas, y aquélla soltera, vecina de San Juan, y ambas mayores de edad, presentaron demanda ante la Corte de Distrito de Humacao con fecha veinte de marzo de 1906 alegando:

"*Primero*. Que el Don Adolfo Desmornes y Bange, natural y vecino de la Isla de Vieques, falleció en dicha Isla en estado de soltería el dia 2 de noviembre del pasado año 1905, sin que hubiese otorgado disposición testamentaria, en ninguna de las formas reconocidas por la ley.

"*Segundo*. Que al morir el Sr. Desmornes no dejó descendientes ni ascendientes legítimos que pudiesen ostentar un derecho preferente á la herencia de dicho señor, quien solo dejó dos hijas naturales é ilegítimas, habidas en sus relaciones con Andrea Alvarez, las que fueron bautizadas en la Iglesia Católica de la Inmaculada Concepción y Apóstol Santiago, del pueblo de Isabel Segunda, de dicha Isla, apareciendo en la partida bautismal de la llamada Isabel, el reconocimiento como hija natural hecho por su padre el finado Sr. Desmornes.

"*Tercero*. Que esas hijas á que se alude en la alegación anterior, son las propias demandantes por esta acción, las que constantemente en vida de Don Adolfo Desmornes han sido tenidas y consideradas por él como sus hijas, dispensándoles toda la protección, cuidado y cariño que un buen padre acostumbra á profesar á sus hijos.

"*Cuarto*. Que como consecuencia de estos actos ejecutados por Desmornes de una manera ostensible, las demandantes por esta acción han sido siempre consideradas por la casi totalidad de los vecinos de Vieques como las hijas reconocidas de aquél señor, quien, en todos sus actos sociales, no se ocultó jamás para aseverar que dichas demandantes eran sus propias hijas habidas durante su unión carnal con su convecina Andrea Alvarez.

"*Quinto*. Que el finado Adolfo Desmornes, desde el 29 de diciembre de 1893 hasta el 16 de febrero de 1904, ha dirigido diversas cartas á las demandantes en esta acción, escritas todas de su puño y letra, en las que se vé manifiestamente el cariño paternal que les profesaba, llamándolas sus queridas hijas y atendiendo á satisfacerles las necesidades más perentorias de la vida.

"*Sexto*. Que al practicarse en la Parroquia de Vieques el acto del

acta del bautismo de la demandante Isabel Desmornes el día 14 de octubre de 1865; su padre Don Adolfo Desmornes presentó una declaración suscrita y firmada por él, en la que autorizaba al Sr. Cura Párroco para consignar en los libros parroquiales el reconocimiento explícito que hacía en favor de la susodicha Isabel, y tal declaración escrita por Desmornes y archivada en la mencionada Parroquia, ha desaparecido ó ha sufrido extravío, siendo inútiles las diligencias practicadas para obtener esta prueba directa de semejante reconocimiento.

"*Séptimo.* Que las demandantes, por esta acción, han practicado incesantes gestiones para averiguar si existen algunas que puedan tener algún derecho á intervenir como partes en este pleito, y, según los informes dados por las personas que tenían mayor intimidad con el finado Adolfo Desmornes, como son el Dr. Guillermo Carrera y el Comerciante Antonio Torres Barba, no existe en Puerto Rico nadie que tenga derecho y título para oponerse á la justa reclamación de las demandantes.

"Por lo que, las susodichas demandantes, Isabel y Josefa Desmornes, por medio de su abogado Juan F. Vías Ochoteco, solicitan de esta honorable corte, que en su día se sirva dictar una sentencia á su favor y en contra de los demandados, en la que se declare á dichas demandantes hijas naturales reconocidas ó ilegítimas de Don Adolfo Desmornes y Banga, con todos los derechos que la ley concede á esta clase de hijos con relación á la persona y bienes de sus padres naturales, con imposición de gastos y costas á los que se opusieren á la presente acción."

Como consecuencia de esta demanda se solicitó la publicación de edictos en el periódico "El Boletin Mercantil de Puerto Rico" y se publicaron porque se presentó ante la corte Don Augusto Burnet, titulándose sobrino de Don Adolfo Desmornes, y negó que las demandantes sean hijas naturales reconocidas de Don Adolfo Desmornes, ó que jamás fueron reconocidas como tales, y concluyó suplicando que se le declare á él solo y único heredero, con derecho á heredar todos sus bienes, que ascendieron á su muerte á la cantidad de siete mil setecientos cuarenta y cinco dollars, y que al propio tiempo se declare que las demandantes no tienen ningún derecho á los bienes de referencia ni á ninguna parte de ellos.

También se presentaron ante la corte de Humacao, Modesta Ramos, dice que representada por su madre Isidora Ramos, y Bartola Delfina, dirigidas ambas por el Letrado Don Salvador Fulladosa, alegando tener igual derecho que las demandantes, por haber vivido en posesión constante del estado de hijas naturales de Don Adolfo Desmornes, por cuya razón se asocian á la demanda y solicitan en su favor la misma declaratoria de hijas naturales ó ilegítimas de.dicho señor.

Se celebró el juicio el 29 de junio de 1906, compareciendo las demandantes por su abogado y Don Augusto Burnet por el suyo y "El Pueblo de Puerto Rico" representado por el fiscal, y la corte, después de recibir la prueba documental suministrada, de oir la testifical y los informes de los abogados, dictó sentencia en 20 de agosto de 1906, resolviendo que la ley y los hechos están en contra de las demandantes, y por tanto, declaró sin lugar la demanda con costas tasadas en   *   *   * á cargo de las demandantes y ordenó que se librase ejecución contra sus bienes para satisfacer esta sentencia.

Este fallo se funda en una opinión escrita del juez de la corte de Humacao, que es'de importancia conocer en toda su integridad, para formar juicio claro acerca del fundamento que tuvo para resolver en la forma que ya se ha indicado.

Esa opinión escrita dice así:

"Esta es una acción iniciada por Josefa é Isabel Desmornes contra los herederos desconocidos de Adolfo Desmornes, en solicitud de que se declare hijas naturales ó ilegítimas de Adolfo Desmornes y Bange, difunto, en cuya acción, por una orden de esta corte, fueron publicados edictos por el término de sesenta días, llamando á los que se creyeran con derecho, en cuyo término compareció Augusto Burnet, como sobrino del causante, y contestó la demanda. A pedimento de ambas partes la corte señaló el día 29 de junio de 1906 para la vista del caso, en cuyo día comparecieron las demandantes, representadas por el Abogado J. F. Vías y el Pueblo de Puerto Rico, por el fiscal, previamente citado, demandado por el Abogado W. H. Hawkins, y la corte, después de recibir la prueba documental, oir la testifical y los informes de los Abogados, se reservó su resolución.

"La evidencia en este caso introducida por las demandantes es de actos realizados por Adolfo Desmornes en distintas fechas y durante el período de tiempo desde el año de 1865 hasta el año de 1905.

"Según la ley 11 de Toro ó sea la Ley 1ª. tit. 5°. lib. 10, de la Novísima Recopilación, la acción de reconocimiento puede ejercitarse en cualquier tiempo durante la vida del padre ó después de su muerte; según el Código Civil de 1889, que derogó las leyes de Toro, esta acción sólo puede ejercitarse en vida del presunto padre; y bajo el Código Civil vigente la acción dura hasta dos años después de ser mayor de edad.

"La muerte del presunto padre de las demandantes, Adolfo Desmornes ocurrió en el mes de noviembre de 1905 y anterior al inicio de esta acción, y como de la prueba resulta que las demandantes llegaron á su mayor edad mucho más de dos años antes de empezar á regir el presente Código, la acción ha prescrito bajo una y otra ley. Pero las demandantes no pretenden que son aplicables al caso los preceptos del Código Civil vigentes ó el anterior, si no afirman que la legislación en que debe fundarse la sentencia es la Ley 11 de Toro; que el reconocimiento de los hijos con anterioridad al Código Civil de 1889 se regulan por la legislación anterior á dicho texto legal; y que de aplicar el Código Civil vigente ó anterior sería violar un derecho adquirido y citan la resolución de la Corte Suprema de España de julio 9 de 1896, que dice:

"Según la regla 4ª. de las transitorias del Código, las acciones y derechos nacidos antes de la publicación de éste, deben subsistir en su extensión y en los términos que les reconociera la legislación anterior."

"Por lo expuesto, el derecho del menor que se encuentre en aquel caso á ser reconocido como hijo natural se halla condicionado, no por los artículos 131, 133 y 135 del Código, sino por la Ley 11 de Toro ó sea la 1ª., tit. 10 de la Novísima Recopilación."

"La base 4ª. de las disposiciones referentes á la publicación del Código Civil de 1899, dice:

"Las relaciones jurídicas derivadas del matrimonio en cuanto á las personas y bienes de los cónyuges y de sus descendientes, paternidad y filiación, patria potestad sucesiva del marido y de la mujer sobre sus hijos no emancipados, efectos civiles del contrato, y en suma, cuantas constituyen el derecho de familia, se determinarán de conformidad con los principios esenciales en que se funda el estado legal presente, sin perjuicio de lo dispuesto en las bases 17, 18, 22 y 23."

"La resolución de la Corte Suprema de España de 9 de julio de 1896 y la base 4ª arriba citada, no hacen otra cosa que afirmar un principio de derecho reconocido desde tiempo inmemorial por la jurisprudencia de todo país civilizado, cual es que un estatuto derogado es como si nunca existiera, excepto con respecto á *transacciones que han pasado y han sido cerradas antes de la derogación,* pero la derogación deja todos los derechos civiles de las partes que fueron adquiridos bajo la ley, inalterables.

"No es la fecha del nacimiento del hijo que determina la legislación que debe aplicarse á la acción de reconocimiento, sino la fecha en que el reconocimiento tuvo lugar; en esta última fecha nace el derecho y no en la primera.

"La corte opina que la prueba de actos realizados por Adolfo Desmornes en la época indicada es la última que puede considerar la corte al dictar sentencia, por tanto, la corte ordena que la sentencia sea dada á favor del demandado.—Humacao, P. R., agosto 20 de 1906.—Charles E. Foote, Juez de Corte de Distrito de Humacao."

Contra la sentencia dictada interpusieron las demandantes Isabel y Josefa Desmornes recurso de apelación para ante esta Corte Suprema, y aquí comparecieron por medio de sus abogados y presentaron una exposición de hechos aprobada por el juez de la corte inferior en 14 de noviembre de 1906.

Después, las apelantes y el apelado Burnet, presentaron sus alegatos escritos, y en el acto de la vista expusieron oralmente todo lo que creyeron conducente á su derecho.

La primera cuestión que debemos estudiar y resolver es si el juez ha podido declarar extinguida la acción de las demandantes para reclamar el derecho á que se refiere la demanda, sin que se haya alegado en ninguna forma la prescripción de dicha acción. En otros términos, si el juez de oficio ha podido fundarse en la prescripción para resolver del modo que ha resuelto.

El único demandado que compareció y contestó la demanda fué Don Augusto Burnet, y este caballero negó el derecho de las demandantes en el fondo, sin alegar absolutamente nada referente á la prescripción.

El artículo 109 del Código de Enjuiciamiento Civil prescribe que cuando no se presenta impugnación á la demanda ni por medio de excepción previa, ni al contestarla debe entenderse que el demandado renuncia á ello, salvo únicamente la objeción á la competencia de la corte y la de que la demanda no expone hechos suficientes para determinar una causa de acción. Y corroborando esto mismo, viene el artículo 128 de dicho cuerpo legal, á precisar la forma en que debe alegarse la prescripción y si se impugna tal alegación la parte que lo haya aducido deberá probar en el juicio los hechos en que se funde la prescripción.

De manera que el juez, al dar por existente la prescripción por propio impulso, ha prescindido del deber que la ley impone al demandado de alegarla y probarla en su caso y del derecho de las demandantes de negar esa alegación.

Y esto no puede hacerse dentro del buen orden del procedimiento.

"La alegación, como defensa, de la ley de prescripción, es un privilegio personal del deudor, el que puede usar ó renunciar á voluntad, pero debe interponerse en alguna forma, ya por medio de excepciones previas ó en la contestación, ó se entenderá que ha sido renunciada."

 *Grattan* v. *Wiggins,* 23 Cal., 25.

 *Kelley* v. *Kriess,* 68 Cal., 213.

"Cuando de la faz de la demanda aparece claramente que la ley de prescripción tiene aplicación, la objeción puede hacerse por medio de una excepción. Cuando de la demanda no aparece tal cosa, la objeción debe hacerse en la contestación."

 *Ord* v. *de la Guerra,* 18 Cal., 75.

 *Barringer* v. *Warden,* 12 Cal., 314.

 *Miles* v. *Thorne,* 38 Cal., 335.

 *Cameron* v. *San Francisco,* 68 Cal., 391.

De manera que la ley y la jurisprudencia de la Corte Suprema del Estado de California, tienen por renunciada la alegación de la prescripción cuando no se alega ni como excepción ni contestando la demanda.

Y la razón es obvia.  La prescripción de las acciones está sujeta en términos generales y dentro del Código Civil Revisado y del anterior, á la prueba de su interrupción y mal puede venir esa prueba si en ninguna forma se ha alegado por la parte demandada, ó en una palabra, si no ha sido objeto del debate.

Hay otra razón de orden moral que en pocas palabras la expresa Escriche en su Diccionario de Legislación y Jurisprudencia y á que se refiere el abogado de las apelantes en su "Memorandum de Autoridades."

"Los Jueces, dice, no pueden suplir de oficio el medio de la prescripción en materias civiles, pues la parte que no la opone puede ceder al grito de su conciencia."

Y creemos que con lo expuesto queda esclarecido que se ha cometido error por la corte sentenciadora, y su sentencia debe revocarse.

Pudiera objetarse que los hechos no determinan una causa de acción porque las demandantes no expresan en la demanda que son menores de 23 años para estar en condiciones de ejercitar la acción que les otorga el artículo 199 del Código Civil Revisado.

Pero esto tampoco se ha alegado en la contestación y en todo caso constituiría la excepción previa de falta de capacidad legal para demandar, que no debe referirse á una falta de hechos suficientes para constituir una causa de acción.

*De Belt* v. *Carter,* 31 Ind., 355.

*People* v. *Crooks,* 53 N. Y., 468.

*Pomeroy on Remedies,* sec. 208.

(Véase Pomeroy, Cod. de Enj. Civ. de Cal., p. 209.)

. Pero hemos dicho antes que tenemos ante nuestra consideración una exposición de hechos aprobada sin enmiendas por el juez de la Corte de Distrito de Humacao, y debemos prestarle la debida atención, para deducir si se ha ó no probado el derecho que las demandantes reclaman.

Han declarado en este juicio once testigos de representación y todos están conformes en que las demandantes nombradas Josefa é Isabel eran consideradas y tenidas públicamente como hijas por Don Adolfo Desmornes, siendo de notar que entre esos testigos están el Médico Don Guillermo Carreras, que asistió en su última enfermedad á dicho Don Adolfo; Don José A. Vera, que es colector de rentas de Vieques, y Don Modesto Ríos, que es juez de paz del mismo pueblo.

El primero expresa que le dijo á Desmornes que arreglara sus asuntos, y éste varias veces le contestó: "Yo no tengo que arreglar asuntos doctor, porque no tengo más herederos que mi hija Isabel," que ésta vivía en su casa y le asistió siempre como una buena hija.

El segundo, ó sea el colector, declara que, debiendo contribuciones Don Adolfo, se le presentó un día en su oficina y le dijo "yo mandaré á mi hija á pagarlas, y que, á los pocos días, se presentó su hija Pipia, que cree que su nombre es Josefina, más bien parece que es Isabel, y pagó á nombre de su padre el primer semestre de la contribución.

El juez de paz manifiesta que desempeña ese cargo hace siete años y que sabe que Desmornes, de estado soltero, tenía dos hijas, una de sobre nombre Pipia, parece que es Isabel, y otra Josefa; que en una ocasión le aconsejó que hiciera testamento, y él le contestó que su hija Pipia arreglaría sus asuntos; que ésta le asistió durante su última enfermedad, y que en una ocasión se lamentaba el Desmornes, con el declarante, de que su otra hija, Josefa, hubiera ido un día á verle, para marcharse inmediatamente, dejándole enfermo.

Todos los demás testigos sustancialmente declaran sobre la certeza de la consideración pública y estado de hijas que á Don Adolfo Desmornes merecían las demandantes, estando, además, probado que dicho señor murió siendo soltero.

Hay además diez y seis cartas que, según la declaración de Isabel, se perdieron, y cuando murió Don Adolfo, las encontró en el fondo de un baúl; que en 1893 convino con su hermana en

hacer á su padre una reclamación de reconocimiento, fundadas en esas cartas, pero como se extraviaron, nada pudo hacer en aquella fecha, por más que todo el pueblo de Vieques sabe que Desmornes era su padre y como tal la consideraba.

De esas diez y seis cartas, cuya letra y firma han sido reconocidas como de Desmornes por diferentes testigos, unas están dirigidas á Pipia que es Isabel y otras á Josefa, y en todas ellas campea la intimidad y afecto de un padre comenzando casi siempre llamándolas ''hijas'' y concluyendo en todas con el título de ''padre,'' y hablando de su enfermedad y de su estado económico que le imposibilitaba de enviarles dinero.

Pero con respecto á Isabel hay, en su favor, un dato importante, que por sí solo no sería bastante para declarar su derecho, pero que integrado con lo que dejamos expuesto, decide el ánimo en su favor para considerarla como realmente hija de Don Adolfo Desmornes.

Me refiero á la partida de su bautismo, que, en copia, obra en el récord. En ella se expresa que Isabel es hija natural de Adolfo Desmornes y que nació el veinte y nueve de noviembre de 1865.

No concurre esta circunstancia especial en favor de Josefa, y quizás la prueba con respecto á ella haya resultado un poco débil; pero el hecho de que, lejos de impugnarla Isabel, hace con ella causa común, y ejercitan ambas la misma acción y reclaman el mismo derecho bajo la misma dirección profesional, parece que esa absoluta conformidad revela que ambas son hermanas y que gozaron siempre de igual consideración de hijas del ya referido Don Adolfo Desmornes.

La posesion de estado de hijo natural sólo requiere la continuación de hechos que presenten á una persona en la relación no interrumpida de hijo natural de otra persona, y la prueba practicada demuestra esa persistente relación de hechos.

Algunos testigos se refieren á otros hijos, y hay en el récord, como se ha dicho antes, un escrito de Modesta Ramos y Bartola Delfina, suscrito por el Letrado Don Salvador Fulla-

dosa, en cuyo escrito se dice que se asocian á la reclamación de Isabel y de Josefa, por tener igual derecho á causa de haber estadó en posesión constante del estado de hijas de Don Adolfo.

Pero ni unos ni otros han hecho prueba alguna, ni se les nombra siquiera en la sentencia, ni han establecido contra ella recurso alguno.

No podemos, por consiguiente, hacer sobre ellas declaratoria de ningún género.

Ahora bien, por lo que respecta á Isabel y Josefa, no se hizo pór la corte de Humacao declaración con respecto al fondo del derecho que reclaman, pero ellas practicaron su prueba y á nosotros se nos ha sometido en forma para su estudio y apreciación.

Esa prueba les es del todo favorable.

La ley aprobada en 8 de marzo de 1906 que empezó á regir el primero de abril de dicho año y que enmendó el artículo 306 del Código de Enjuiciamiento Civil, dice:

"Cuando se revocare la sentencia, orden ó decreto del tribunal inferior, la corte procederá á pronunciar la sentencia, orden ó decreto que debió haber dictado el tribunal inferior, salvo etc."

De manera que, revocando, como debe revocarse, sin hacer expresa condenación de costas, la sentencia apelada, debe dictarse otra, declarando que Isabel y Josefa Alvarez son hijas naturales y deben tenerse por reconocidas de Don Adolfo Desmornes y Bange, y que deben sucederle con todos los derechos que el Código Civil vigente al fallecimiento de dicho señor Desmornes, conceda á los de su clase.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociado, Hernández.

Jueces disidentes: Sres. MacLeary y Wolf.